**STATE of Texas et al., Appellants,**

v.

**Lila Faye NORRIS, Appellee.**

**No. 1166.**

Court of Civil Appeals of Texas, Corpus Christi.

April 14, 1977.

Rehearing Denied May 12, 1977.

Harold G. Kennedy, Asst. Atty. Gen., Austin, for appellants.

Ernest H. Cannon, Riddle, Murphrey, O'Quinn & Cannon, Houston, for appellee.

## OPINION

BISSETT, Justice.

This is a suit brought under Tex.Rev.Civ. Stat.Ann. art. 6252–19 (Supp.1976), commonly called the Texas Tort Claims Act. Lila Faye Norris filed suit against the State of Texas, the State Department of Highways and Public Transportation, and the State Commission for Highways and Public Transportation to recover damages for personal injuries which she sustained in an automobile accident on January 23, 1974, which allegedly occurred because a traffic signal light at an intersection in Bay City, Texas, was malfunctioning. Trial was to a jury. All issues were answered favorably to plaintiff. Judgment was rendered that plaintiff recover from defendants the sum of $82,597.43. Defendants have perfected an appeal from that judgment.

■ Defendants contend in point of error 6 that the trial court erred in submitting Special Issue 1 inquiring of a "malfunctioning condition", because the same constitutes a global submission which is not limited to a controlling issue. The issue, as submitted, reads:

"Do you find from the preponderance of the evidence that the traffic signal at Avenue C and 7th Street in Bay City, Texas, was in a malfunctioning condition on the occasion in question?"

The jury answered: "we do,"

■ Rule 277, T.R.C.P. (Supp.1976), as amended in 1973, permits the trial court, at its discretion, to submit broad issues to the jury. An issue is not now objectionable because it is general. The rule, as now amended, should be given a liberal construction. *Security Federal Savings & Loan Association v. DeWitt*, 536 S.W.2d 262 (Tex. Civ.App.—Amarillo 1976, writ ref'd n. r. e.); *Members Mutual Insurance Company v. Muckelroy*, 523 S.W.2d 77 (Tex.Civ.App.— Houston [1st Dist.] 1975, writ ref'd n. r. e.); *Shasteen v. Mid-Continent Refrigerator Co.*, 517 S.W.2d 437 (Tex.Civ.App.—Dallas 1974, writ ref'd n. r. e.). Point 6 is overruled.

The jury further found: the traffic signal light system at the intersection of Avenue C and 7th Street in Bay City, Texas, was in a malfunctioning condition on the occasion in question; and that the malfunctioning condition constituted a dangerous condition (12). Those findings (Nos. 1 and 12) are attacked by points 1 and 4, "no evidence" points, and by points 8 and 15, "factually insufficient evidence" points.

The collision made the basis of this suit occurred shortly before noon on January 23, 1974, in Bay City, Texas in the intersection of Avenue C and 7th Street. State Highway 35 traverses that portion of 7th Street in the area of the intersection. Plaintiff, immediately preceding the accident, was driving her automobile north along Avenue C. She entered the intersection of Avenue C and 7th Street, hereinafter referred to as "the intersection," and while she was in the intersection her automobile was struck by a truck which was then being driven by Mr. Jessie Figueroa, who was proceeding east on 7th Street.

In Bay City, 6th and 7th Streets run east and west; 7th Street is north of 6th Street. Avenue C runs north and south and crosses both 6th and 7th Streets.

It is undisputed that the State Highway Department, in the year 1970, assumed the maintenance of the traffic signal light sys-

tem, hereinafter referred to as "the light," at the intersection in question. At all times pertinent to this appeal, it was the duty and responsibility of the Highway Department to maintain the light at the intersection where the collision occurred in proper working order.

The color of the lights which are shown for traffic on the intersecting streets, as well as the time each color is exhibited and the cycle of change, is regulated by a "controller," an electronic device. The controller actuates the relay system for the traffic signal light.

Plaintiff testified that immediately before the collision, she was proceeding west on 6th Street. At the intersection of 6th Street and Avenue C, she observed that the traffic signal light facing south on Avenue C at the intersection of 7th Street and Avenue C was red. She turned right (north) onto Avenue C and proceeded toward 7th Street. She stated that the traffic signal for traffic moving north on Avenue C turned green before she reached 7th Street, and further stated that it was green when she entered such intersection to turn left (west) on 7th Street. Her automobile was struck by the truck before she cleared the intersection. Mr. Figueroa, the driver of the truck, testified that the signal facing him (for traffic proceeding east on 7th Street) was green when he entered the intersection.

■ The evidence with respect to whether both plaintiff and Figueroa had a green light when each entered the intersection is conflicting. But it was within the province of the jury to resolve conflicts and inconsistencies in the testimony of any witness as well as in the testimony of different witnesses. *Ford v. Panhandle & Santa Fe Ry. Co.*, 151 Tex. 538, 252 S.W.2d 561 (1952). "The credibility of witnesses is a matter which is evaluated by a court or a jury sitting as a fact and truth finder." *Great American Insurance Company v. Murray*, 437 S.W.2d 264, 266 (Tex.Sup.1969).

■ The State Highway Department correctly observes that the only witnesses who

testified directly that the light was green for both drivers of the vehicles when each entered the intersection were the drivers themselves. It contends that such testimony "constitutes no evidence of a malfunction of the traffic signal, or at most, no more than a mere scintilla." We do not agree. Figueroa was a disinterested witness in this case. Plaintiff's testimony was positive, unequivocal, and is as competent to raise an issue of fact as the same evidence coming from a disinterested witness. *Bishop v. Bishop*, 359 S.W.2d 869 (Tex.Sup. 1962). There was ample evidence, both direct and circumstantial, all of which had probative value to support the jury's findings that the light showed "green" simultaneously for both plaintiff and Figueroa, that it was in a malfunctioning condition on the occasion in question, and that the malfunctioning condition constituted a dangerous condition. Points 1, 4, 8, and 15 are overruled.

The jury also found: the State Highway Department had notice of the malfunctioning condition prior to the accident (Special Issue No. 2); the State Highway Department failed to correct the malfunctioning condition within a reasonable time after notice of the malfunctioning condition (Special Issue No. 3); such failure was negligence, which was a proximate cause of the accident (Special Issues Nos. 4 and 5); the failure by the State Highway Department to warn motorists of the malfunctioning condition was negligence, which was a proximate cause of the accident (Special Issues Nos. 10 and 11); the State Highway Department had knowledge of the dangerous condition prior to the accident (Special Issue No. 13).

Defendants attack the answers to Special Issues Nos. 2, 3, and 13 by "no evidence" points (2, 3, and 5), and the answers to Special Issues Nos. 2, 3, 5, 6, 7, 9, and 13, by "factually insufficient evidence" points (9, 10, 11, 12, 13, 14, and 16). They further contend in point 7 that Special Issue No. 2, which inquired into whether the State Highway Department had "notice" of the malfunctioning condition of the traffic sig-

nal system should not have been submitted over defendants' objection because "actual notice" is required.

The pertinent provisions of the Texas Tort Claims Act, hereinafter called "the Act," read, in part, as follows:

"Sec. 3. Each unit of government in the state shall be liable for money damages . . . proximately caused by the . . . death or personal injuries so caused [proximately caused by the negligence or wrongful act or omission of any officer or employee acting within the scope of his employment or office] from some condition or some use of tangible property, real or personal, under circumstances where such unit of government, if a private person, would be liable to the claimant in accordance with the law of this state . . ."

\* \* \* \* \* \*

"Sec. 14. The provisions of this Act shall not apply to:

\* \* \* \* \* \*

(12) Any claim arising from the absence, condition, or malfunction of any traffic or road sign, signal, or warning device unless such absence, condition, or malfunction shall not be corrected by the governmental unit responsible within a reasonable time after notice, or any claim arising from the removal or destruction of such signs, signals or devices by third parties except on failure of the unit of government to correct the same within such reasonable time, after actual notice . . ."

\* \* \* \* \* \*

"Sec. 18(b). As to premise defects, the unit of government shall owe to any claimant only the duty owed by private persons to a licensee on private property, unless payment has been made by the claimant for the use of the premises. Provided, however, that the limitation of duty contained in this subsection shall not apply to the duty to warn of special defects such as excavations or obstructions on highways, roads or streets, nor shall it apply to any such duty to warn of the absence, condition or malfunction of traffic signs, signals or warning devices as is required in Section 14 (12) hereof."

The parties in the trial court disagreed as to the issues that were to be submitted to the jury. The trial judge submitted the case both ways in accordance with the parties' own interpretation of the Act. Special Issues 2 through 5 submitted the case on plaintiff's theory that only "notice" of the malfunctioning traffic signal system was required to support her recovery in the action brought by her under the Act. Special Issues 6 through 9 submitted the case on the State Highway Department's theory that "actual notice" is required.

The provisions of the Act, insofar as those which are applicable to this case are concerned, provide for governmental liability on any claim arising out of the failure to correct the malfunction of a traffic signal light within a reasonable time after the proper governmental unit receives "notice" of such malfunction. *Sparkman v. Maxwell*, 519 S.W.2d 852, 857 (Tex.Sup. 1975); *City of Denton v. Mathes*, 528 S.W.2d 625, 628 (Tex.Civ.App.—Fort Worth 1975, writ ref'd n. r. e.).

Notice is defined in 41 Tex.Jur.2d, Notice, § 2, as follows:

"Notice may be defined as information concerning a fact actually communicated to a person by an authorized person, as information actually derived by him from a proper source, or else as information presumed by the law to have been acquired. Presumed information is considered the equivalent, in legal effect, of full knowledge. . . ."

The above-quoted definition was approved in *Flack v. First Nat. Bank of Dalhart*, 148 Tex. 495, 226 S.W.2d 628 (1950). It has also been determined that "imputed actual notice carries with it the same legal consequences as conscious knowledge." *Champlin Oil & Refining Company v. Chastain*, 403 S.W.2d 376, 388 (Tex.Sup.1965).

The term "condition," as used in Subsection 12 of Section 14 of the Act, refers to the maintenance of a sign, signal or warn-

ing device "in a condition sufficient to properly perform the function of traffic control for which it is relied upon by the traveling public." *Lawson v. Estate of McDonald,* 524 S.W.2d 351, 356 (Tex.Civ.App.—Waco 1975, writ ref'd n. r. e.).

The reports pertaining to the light at the intersection from January 10, 1973 through January 23, 1974 were introduced in evidence. Mr. John M. Lipscomb, the State Highway Department's traffic engineer for the Bay City area, testified that the reports for that year showed that twelve trips, each labelled "emergency," were made to the intersection because "there were malfunctions in that light." Both the reports and the testimony of Mr. Manuel Ramos, a repairman for the State Highway Department, show that emergencies because the light was "not functioning properly" occurred on January 31, 1973; February 1, 1973; August 29, 1973; August 30, 1973; October 16, 1973; October 17, 1973; December 21, 1973; December 22, 1973; December 29, 1973; December 31, 1973; January 10, 1974; January 23, 1974. It is undisputed that the State Highway Department's Electric Shop was contacted following each of the emergencies. Ramos, whose responsibility was to inspect traffic signal lights (including the light in question), "to see to it that they were maintained properly," testified that he put out "flashing" stop signs when the lights were not operating properly, and called "the electrical shop and they would come out and take care of it." On the occasion in question, he arrived at the scene of the accident about 1:15 p. m. He filed the following report with the State Highway Department:

"It is a light malfunctioning and was placed on flashing and signs put out, stop signs, and I called the traffic shop, the electrical shop."

He further testified that it was possible for the light facing the direction that plaintiff was travelling and the light facing the direction that Figueroa was proceeding to both show green at the same time. He also said that the light had been out of order part of the year 1973. He also testified that on December 29, 1973, he made the following report to Mr. Jarvis, the "traffic signal man" for the Highway Department in the Bay City area, concerning the light at the intersection:

"Traffic signal not functioning properly."

Mr. Jimmy Messer, who worked at a service station at the intersection for approximately a year before the accident, testified that shortly after the collision he heard "tires squealing," looked up and saw "the lights were messed up" and "not working like they were suppose to," were showing green for traffic on both streets, "and everybody had the right-of-way." He further testified that during the year he worked at the service station before the collision, the lights malfunctioned on several occasions, and "they had a lot of trouble with it."

Mr. Donald Belyeu, a maintenance employee for the State Highway Department, was sent to the scene of the accident pursuant to Ramos' request that, "the controller be replaced." He arrived there the morning of January 24, 1974. He found the light "on flashing." He tested the system and found that the lights were not operating properly. He replaced the controller. Thereafter, the lights worked properly. He admitted that a controller can malfunction in a manner to show green at the same time for both lights at an intersection.

It is undisputed that the controller in the traffic light system which was in use on the date of the accident was old and in need of replacement. It is established that several of the controllers which were installed and either replaced or exchanged during the year preceding the occurrence in question did not function properly over any extended period of time. The "emergencies" hereinbefore noted, during that year demonstrate that the frequency in the number of breakdowns with respect to the controllers was increasing with the passage of time and the intervals between breakdowns were steadily decreasing. In the latter part of December, 1973, and in the early part of January, 1974, traffic signal problems caused by the traffic light in question "not functioning properly" occurred at intervals of one day,

seven days, two days, ten days, and finally thirteen days until the date of the accident. The increasing frequency of the breakdowns gives rise to a clear and reasonable inference that the State Highway Department could expect the light to malfunction and thereby create a dangerous condition every few days or so, and certainly in less than the period of thirteen days that elapsed between January 10, 1974, when the last "emergency" occurred, and the date of the accident.

The State Highway Department could not ignore the probability that the light would malfunction within the thirteen day period between January 10 and January 23, 1974; yet, an alternative system was not employed by the State for the protection of the travelling public. There is a conflict in the evidence presented by the State Highway Department in connection with just when the controller that was in use on January 23, 1974 was last installed in the traffic light at the intersection. There is evidence that on December 29, 1973, Ramos requested that that controller then in use, No. G–5682, be replaced. However, according to his testimony, the same controller was still in use when he arrived at the scene of the accident. The State Highway Department's records show that controller No. G–5682 was replaced on December 31, 1973 and that controller No. G–7072 was installed and that it was in use when the accident occurred.

■ From all of the evidence adduced at the trial, it follows that the State Highway Department, through its "repairman" and its "traffic engineer," had notice that the traffic signal light system at the intersection of Avenue C and 7th Street in Bay City, Texas, was defective, and particularly that the controllers which controlled the colors of the several lights were malfunctioning for a period of several weeks before January 23, 1974, when plaintiff was injured in the collision. The State Highway Department was on notice that the traffic light could not be expected to function properly for more than a few days before

there would be a breakdown. We are of the view that the State Highway Department had notice that the controllers that had been installed at various times subsequent to October 16, 1973 were all generally defective, since the general defective condition was of the same general character as the particular defect which caused the accident. The State Highway Department, which was charged with the duty of maintaining the traffic light in a reasonably safe condition for the travelling public, failed in that duty.

We hold that "actual notice" of the malfunction was not required in order to subject the State Highway Department to liability for plaintiff's injuries. All that is required to render the State Highway Department liable in this case is that the "malfunction shall not be corrected by the governmental unit responsible within a reasonable time after notice," as provided in the first sentence of Subsection 12 of Section 14 of the Act. *Sparkman v. Maxwell*, supra; *City of Denton v. Mathes*, supra. If the legislature had intended that the governmental unit having responsibility should have "actual notice" in a malfunctioning light case, it would have said so, as it did in the second sentence of Subsection 12, concerning claims arising from the *removal* or *destruction* of "signs, signals or devices" by *third persons*. This is not a "premises defects" case. It is not a case where there has been an injury which resulted from the removal or destruction of a traffic signal. There is nothing in the evidence which intimates that the defective condition in the traffic light was caused by the conduct of a third person. It is not necessary for us to reach the question of notice requirements which must exist in order to hold a governmental unit liable in damages for either "premise defects" or "removal or destruction" of traffic signals by third persons, since the facts of this case rule out claims under those circumstances and conditions.

The State Highway Department had actual knowledge that the traffic signal light system in question was old, in need of re-

placement, frequently malfunctioned, and, in general, was in a defective condition. It is enough under the Act, as applied to the facts of this case, that the governmental unit, the State Highway Department, had notice of either the "condition" or the "malfunction" in order to make it liable for damages which resulted from a malfunction. The State Highway Department had such notice. From a review of all the evidence, together with the inferences that may be legally and reasonably drawn therefrom, the jury was warranted in finding that the State Highway Department had notice of the malfunctioning condition of the light; that it failed to correct this condition within a reasonable time after notice; and that such failure was negligence which proximately caused the accident. Accordingly, points 2, 3, 5, 7, 9, 10, 11, 12, 13, 14 and 16 are overruled.

The jury awarded plaintiff $62,400.00 damages for loss of earning capacity which, in reasonable probability, she will sustain in the future. The State Highway Department in point 17 says the evidence is insufficient to support the award, and that the "amount is excessive and is manifestly unjust." It is argued that this Court should determine "what amount would reasonably be compensation for the injury sustained, and treat the balance as excess." We do not agree. We have carefully considered all of the evidence relating to damages. The award finds ample support in the evidence. Point 17 is overruled.

The judgment of the trial court is AFFIRMED.