**George R. ZAMBORY, Individually and As Limited Guardian of the Person and Estate of Bruce Wayne Zambory, Teresa M. Zambory, and Bruce Wayne Zambory, Appellants,**

v.

**CITY OF DALLAS, Texas, Appellee.**

**No. 05–91–00815–CV.**

Court of Appeals of Texas, Dallas.

June 17, 1992.

Rehearing Denied Aug. 3, 1992.

John E. Kirby, Dallas, for appellants.

Joe N. Boudreaux, Dallas, for appellee.

Before BAKER, BURNETT, and ROSENBERG, JJ.

## OPINION

BURNETT, Justice.

George R. Zambory, individually and as limited guardian of the person and estate of Bruce Wayne Zambory, Teresa M. Zambory, and Bruce Wayne Zambory appeal a summary judgment granted for the City of Dallas. In one point of error, Zambory asserts that the trial court erred in granting summary judgment for the City because it construed Zambory's cause of action as one based on the City's failure to perform a discretionary act that is barred by the Texas Tort Claims Act or governmental immunity. We sustain Zambory's point of error. We reverse the trial court's judgment. We remand this cause for trial.

## FACTS

The White Rock Bicycle Trail crosses Greenville Avenue at the intersection of Greenville Avenue and Royal Lane. The trail runs parallel to Royal Lane at that intersection. The City opened the bike trail before the completion of Royal Lane. The City planned to install a traffic signal light when the contractors completed the Greenville/Royal intersection.

In 1987, Mike Keel, a member of the Greater Dallas Bicyclist Organization and an appointed member of the White Rock Bicyclist Safety Task Force, tried to persuade the City to install a traffic signal light before the completion of the intersection. He continually communicated to it about the danger created by the intersection of Greenville Avenue and the bike trail. Keel urged the City to install the signal through direct communication with Sam Wilson, the City Department of Transportation's Assistant Director of Field Operations, and the Dallas City Council. Keel performed a survey at Wilson's request to show the substantial traffic on the trail.

In early 1987, Meredith Byrne, the Bicycle Coordinator for the City of Dallas, recommended to the Department of Transportation's District Engineer that something else should be done with the intersection. She believed that the present warnings—a crosswalk with "bike xing" painted on the road and warning signs with flashing lights—were not adequate to insure safety due to the amount of automobile traffic and the continuous flow of bicycle and pedestrian traffic.

On April 12, 1988, a bicyclist was killed as he entered the intersection of the bike trail and Greenville Avenue. On April 27, 1988, Keel spoke at the City Council meeting. He presented a petition signed by 1200 to 1300 bike trail users requesting the traffic signal. One council member suggested a temporary signal or early installa-

tion of the permanent signal. Another council member agreed and stated, "[L]et's just move expeditiously … whatever is the best way to do it. Let's do it." The mayor then asked the Council members if they needed a motion and the Council said no. The mayor ended the meeting by saying to Keel "Thank you very much for coming and just know that we share in your sadness and we will do something to prevent it from happening again."

The day after the Council meeting, an automobile driven by Scott Wayne Sullivan struck Bruce Wayne Zambory as he rode his bicycle across the intersection. Sullivan was driving on behalf of his employer Liberty Mutual Insurance Company. Zambory settled with Sullivan and Liberty Mutual. Zambory brought suit against the City alleging negligence for the City's failure to implement its decision to install a traffic signal light after receiving notice of the dangerous condition created by the intersection.

## SUMMARY JUDGMENT

In one point of error, Zambory asserts that the trial court erred in granting the City's motion for summary judgment. Zambory contends that the City's failure to install a traffic signal light in the intersection until after the two accidents, or its failure to do so after indicating that it was going to install a traffic signal light, constitutes negligent implementation of a discretionary act. The City responds that its decision not to install the traffic signal until the completion of the intersection is a discretionary act protected by governmental immunity.

■ Summary judgment may be rendered only if the pleadings, depositions, admissions and affidavits show (1) that there is no genuine issue as to any material fact and (2) that the moving party is entitled to judgment as a matter of law. TEX. R.CIV.P. 166a(c); *Rodriguez v. Naylor Indus., Inc.,* 763 S.W.2d 411, 413 (Tex.1989). A summary judgment seeks to eliminate unmeritorious claims and untenable defenses, not to deny a party its right to a full hearing on the merits of any real issue of fact. *Gulbenkian v. Penn,* 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952).

In a summary judgment proceeding, the defendant, as movant, must either (1) disprove at least one element of each of the plaintiff's theories of recovery or (2) plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 679 (Tex.1979). A summary judgment for the defendant disposing of the entire case is proper only if, as a matter of law, plaintiff could not succeed upon any theory pleaded. *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon v. Mr. Property Mgmt. Co.,* 690 S.W.2d 546, 549 (Tex.1985).

## APPLICABLE LAW

■ Under the Tort Claims Act, the City cannot be held liable for a failure to perform an act that it is not required by law to perform or for decisions that are purely discretionary. TEX.CIV.PRAC. & REM.CODE ANN. § 101.056 (Vernon 1986). It has been traditionally held that the regulation of traffic is a governmental function that falls under the definition of a discretionary decision. *Lorig v. City of Mission,* 629 S.W.2d 699, 700 (Tex.1982). The City can be held liable for negligent implementation of a discretionary act. Decisions incidental or related to the implementation of a discretionary or policy-formulated decision are not immune from liability. *State v. Terrell,* 588 S.W.2d 784, 788 (Tex.1979).

Section 101.060 reiterates this principle within the specific context of traffic-control devices. TEX.CIV.PRAC. & REM.CODE ANN. § 101.060 (Vernon 1986). The section provides:

(a) This chapter does not apply to a claim arising from:

(1) the failure of a governmental unit initially to place a traffic or road sign, signal or warning device if the failure is

a result of discretionary action of the governmental unit;

(2) the absence, condition or malfunction of a traffic or road sign, signal, or warning device unless the absence, condition or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice....

 The Tort Claims Act provides plaintiffs the opportunity to sue cities for claims arising from the absence, condition, or malfunction of any traffic or road sign, signal, or warning device provided that the governmental unit responsible had notice of the problem and failed to act within a reasonable time. *See City of Pasadena v. Freeman,* 731 S.W.2d 590, 593 (Tex.App.— Houston 1987), *aff'd,* 744 S.W.2d 923 (Tex. 1988); TEX.CIV.PRAC. & REM.CODE ANN. § 101.060(a)(2) (Vernon 1986). Reasonableness is a fact issue for the trier of fact that is rarely appropriate in a summary judgment. *See New Amsterdam Casualty Co. v. Texas Indus. Inc.,* 408 S.W.2d 733, 735 (Tex.App.—Austin 1966), *rev'd on other grounds,* 414 S.W.2d 914 (Tex.1967) (reasonableness of attorney's fees in summary judgment); *Coleman v. Rotana, Inc.,* 778 S.W.2d 867, 872 (Tex.App.—Dallas 1989, writ denied) (whether abandonment by tenant done within a reasonable time is fact question). The City can act only through its governing body. The statements of individual council members do not bind the City. *See Alamo Carriage Serv., Inc. v. City of San Antonio,* 768 S.W.2d 937, 941– 42 (Tex.App.—San Antonio 1989, no writ).

### APPLICATION OF LAW TO THE FACTS

 At the Council meeting, Mike Keel told the Council about the danger of the intersection and the bicyclist's death, which occurred on April 12, 1988. Zambory claims that there was a decision at the end of the meeting to take immediate action by consent of the Council members. The City argues that, since there was not an actual motion or resolution, no decision to install a traffic light was made.

The City had notice of the danger created by the intersection. The tape of the Council meeting reveals that Keel had been before the Council on at least one previous occasion. He had talked with Wilson at the Department of Transportation for over two years about the problem. Byrne had told the district engineer sometime before Zambory's accident that the warnings at the intersection were not adequate.

Genuine issues of material fact exist on when the City received notice that the absence of the traffic signal created a dangerous condition, whether the City acted at the City Council meeting and, if it did act, whether it did so within a reasonable time after receiving notice.

We sustain Zambory's point of error. We reverse the trial court's summary judgment and remand this cause for trial.