Christopher R. CAPSHAW, as personal representative of the Estate of Becky M. Capshaw, Individually and as Next Friend of Christopher Russell Capshaw, Jr. and Jonathan David Capshaw, minor children, Appellant,

v.

TEXAS DEPARTMENT OF TRANSPORTATION, f/k/a State Department of Highways and Public Transportation and City of El Paso, Appellees.

No. 08–97–00204–CV.

Court of Appeals of Texas, El Paso.

March 25, 1999.

Rehearing Overruled May 12, 1999.

R. Wayne Pritchard, Brandys Carson & Pritchard, P.C., El Paso, for appellant.

Chris M. Borunda, Laura P. Gordon, Asst. City Attys., Charlie F. McNabb, City Atty., El Paso, Susan E. Wells, Susan Desmarais Bonnen, Asst. Attys. Gen., Transp. Div., Austin, for appellees.

Before Panel No. 4 BARAJAS, C.J., LARSEN, and McCLURE, JJ.

## OPINION

SUSAN LARSEN, Justice.

Becky Capshaw was killed in an automobile accident in El Paso, Texas on June 8, 1994. Her family sued Danny Herman Trucking, Inc., the Texas Department of Transportation f/k/a State Department of Highways and Public Transportation ("TxDOT"), and the City of El Paso ("City") for wrongful death. The City and TxDOT moved for summary judgment, based on sovereign immunity.[1] The trial court granted both the City's and TxDOT's motions for summary judgment. The Capshaws appeal.

### FACTS

On June 8, 1994, Becky Capshaw was driving to work. She entered the intersection of Loop 375 and Montana Street, where her car was struck by an eighteen wheel tractor trailer owned by Danny Herman Trucking and operated by Thomas William Stewart. She was dead on arrival at a local emergency room. The design and maintenance of the intersection where Ms. Capshaw was killed forms the basis of her family's lawsuit against the City and TxDOT.

On April 12, 1994, the City entered into an agreement with TxDOT to maintain the intersection of Loop 375 and Montana Street. From the approach taken by Ms. Capshaw, this intersection has two sets of traffic control lights. The intersection was designed such that the second set of lights should not be seen by automobiles at the first set of traffic lights. To facilitate this design, the second set of lights are special 3M traffic lights, which can be aimed so they are visible only to the traffic they are meant to control. These 3M heads must be adjusted periodically to aim them correctly, so they do not confuse drivers entering the intersection. Joe Ternus, an expert witness for the plaintiffs, stated his opinion that, "Mrs. Capshaw saw a green [light] indicating prematurely that she should not have seen, and this caused her to enter the intersection." A second expert similarly concluded, "It is further evident that the signal head for traffic on southbound Loop 375 at the intersection of Montana eastbound was improperly aimed and visible to Ms. Capshaw at a location consistent with her stopping at the stop bar on the north side of the intersection.... [W]hen Ms. Capshaw reached the stop bar on the north side of the intersection ... the signal at eastbound Montana was green or turned green and she responded to that signal and entered the westbound lanes of Montana." This opinion evidence is consistent with eyewitness statements that Ms. Capshaw inexplicably entered the intersection against the light.

One week before Ms. Capshaw's accident, high winds blew through El Paso. Many 3M traffic signals, including those at the intersection of Montana and Loop 375, needed reaiming after the windstorm. On June 6, 1994, Manuel Doporto noted in the City's

---

1. Danny Herman Trucking settled its portion of the lawsuit. It is not a party to this appeal.

maintenance report that the City "must re-tape 3M heads." Adalberto Enriquez, a City employee, signed an affidavit in which he stated that he performed maintenance on the traffic signals on June 7, 1994 and that the traffic signals were "fully operational." But during deposition, Enriquez stated that he was unaware of anybody retaping the 3M heads between June 6 and June 8, 1994. When asked if he had to re-aim any traffic signals on or around June 1, 1994 as a result of a bad wind storm, he replied, "Myself, no." He was also unaware of Manuel Doporto's maintenance report notation that said "must retape 3M heads." Had he known of the notation, he would have "double-checked" the traffic signals, which he did not do.

## STANDARD OF REVIEW

In a motion for summary judgment, the movant has the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.[2] Evidence favorable to the nonmovant is taken as true, and every reasonable inference is resolved in favor of the nonmovant.[3] In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true.[4] Evidence that favors the movant's position will not be considered unless it is uncontroverted.[5] To prevail on summary judgment, a defendant must disprove as a matter of law at least one of the essential elements of each of plaintiff's causes of action, or it must conclusively establish one or more of its defenses.[6] Among the defenses advanced, both the City and TxDOT properly pleaded sovereign immunity as an affirmative defense to suit.[7] When a trial court does not specify the grounds upon which it grants a summary judgment, as here, we will affirm the judgment if any one of the theories advanced in the motion is meritorious.[8]

We will address separately the propriety of the trial court's decision to grant each governmental entity's motion for summary judgment.

### City of El Paso's Liability

■ The Texas Tort Claims Act governs the liability of TxDOT and the City here. It provides that a responsible governmental unit has a "duty to warn of the absence, condition, or malfunction of traffic signs, signals, or warning devices,"[9] but is not liable for claims arising from "the absence, condition, or malfunction of a traffic or road sign, signal, or warning device unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice."[10] Thus, the City may be liable only if it knew about a dangerous condition involving a traffic signal and did not correct it within a reasonable time after notice.[11] Reasonableness presents a fact issue rarely appropriate for summary judgment.[12]

The maintenance records and deposition testimony of Manuel Doporto indicate that the City had notice on June 6, 1994 that the traffic signal in question needed retaping.

2. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985).

3. *Id.* at 548–49.

4. *Knowles v. City of Granbury*, 953 S.W.2d 19, 22 (Tex.App.—Fort Worth 1997, writ denied).

5. *Id.*

6. *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282 (Tex.1996).

7. *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994).

8. *State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993); *Loyd v. ECO Re-sources, Inc.*, 956 S.W.2d 110, 121 (Tex.App.—Houston [14th Dist.] 1997, no writ).

9. Tex. Civ. Prac. & Rem.Code Ann. § 101.022 (Vernon 1997).

10. Tex. Civ. Prac. & Rem.Code Ann. § 101.060(a)(2) (Vernon 1997).

11. Tex Civ. Prac. & Rem.Code Ann. § 101.060(a)(2) (Vernon 1997); *Sparkman v. Maxwell*, 519 S.W.2d 852, 857–58 (Tex.1975); *Zambory v. City of Dallas*, 838 S.W.2d 580, 583 (Tex.App.—Dallas 1992, writ denied); *State v. Norris*, 550 S.W.2d 386, 391 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.).

12. *Zambory*, 838 S.W.2d at 583.

The City also had notice that the June 1, 1994 windstorm displaced traffic signals so that adjustments to the 3M lights were necessary. The City argues that the affidavit of Adalberto Enriquez conclusively establishes that the maintenance work on the traffic signal was performed on June 7, 1994. But the deposition testimony of Adalberto Enriquez suggests that neither he nor anyone else re-aimed the 3M lights between June 6 and June 8, 1994. Taken in the light most favorable to the plaintiffs, there is a fact question as to whether the City had notice and failed to correct the misdirected traffic signals within a reasonable time. Accordingly, summary judgment was improperly granted with respect to the City's affirmative defense of sovereign immunity.

The City further alleges that it breached no legal duty owed to the plaintiffs. We disagree. The City has a legal duty to correct malfunctioning traffic lights within a reasonable time.[13] The testimonial evidence of Manuel Doporto and Adalberto Enriquez presented by the plaintiffs establish fact issues regarding when the City had notice and whether the City failed to correct the traffic signal within a reasonable time. This evidence satisfies the nonmovant's burden of demonstrating that the City breached its legal duty to Ms. Capshaw. We find summary judgment was inappropriate on this ground.

The City thirdly argues that Danny Herman Trucking, not any mis-aimed traffic signal, was the proximate cause of the accident. Proximate cause consists of cause in fact and foreseeability.[14] The test for cause in fact is whether the defendant's act or omission was a substantial factor in bringing about the injury which would not otherwise have occurred.[15] Both Joe Ternus and Dean Davidson, expert witnesses for the plaintiffs, filed

affidavits stating that the improperly aimed traffic signals caused Ms. Capshaw to enter into the intersection at the incorrect time which led to her collision with the Danny Herman truck. Plaintiffs also provided the deposition of Carlos Chavez, an employee of TxDOT, who stated that a misdirected 3M light could be a foreseeable problem to drivers. Clearly, a genuine issue of material fact existed as to the proximate cause of the accident. Consequently, summary judgment could not be properly granted upon the theory that Danny Herman Trucking was the proximate cause of the accident.

Because the trial court erred in granting summary judgment on the grounds asserted by the City, the appellant's first point of error is sustained.

### Texas Department of Transportation's Liability

TxDOT, like the City, is protected from its own negligence except in situations where the Texas Tort Claims Act provides a limited waiver of sovereign immunity.[16] As with the City, TxDOT is generally not liable for claims arising from defective traffic signals.[17] Nevertheless, TxDOT can be held liable under the Tort Claims Act if it knew of a dangerous condition involving a traffic signal and did not correct it within a reasonable time after notice.[18] What constitutes a "reasonable" time involves fact issues that are rarely appropriate for granting summary judgment.[19]

Plaintiffs here offered the deposition testimony of Carlos Chavez, the El Paso District Director of Transportation Operations for the Texas Department of Transportation, to demonstrate when TxDOT was notified of the 3M heads and when it corrected the

13. TEX. CIV. PRAC. & REM.CODE ANN. § 101.060(a)(2) (Vernon 1997); *Sparkman*, 519 S.W.2d at 857–58; *Zambory*, 838 S.W.2d at 583; *Norris*, 550 S.W.2d at 391.

14. *Holder v. Mellon Mortg. Co.*, 954 S.W.2d 786, 801 (Tex.App.—Houston [14th Dist.] 1997, pet. granted).

15. *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex.1995).

16. TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215 (Vernon 1997 & Supp.1999).

17. TEX. CIV. PRAC. & REM.CODE ANN. § 101.060 (Vernon 1997).

18. TEX. CIV. PRAC. & REM.CODE ANN. § 101.060(a)(2) (Vernon 1997); *Sparkman*, 519 S.W.2d at 857–58; *Zambory*, 838 S.W.2d at 583; *Norris*, 550 S.W.2d at 391.

19. *Zambory*, 838 S.W.2d at 583.

condition. In deposition, Mr. Chavez testified that the traffic signal in question was installed in April 1994, and that TxDOT decided to remove that traffic signal in December 1994, six months after Ms. Capshaw's death. Explaining why the 3M heads were installed and then removed, Chavez testified, "I got some telephone calls. People were not really sure of the function of the programmable heads, how they were supposed to operate. So we were aware of what was going on." This is some evidence that TxDOT was on notice that the traffic signal confused the public (as indeed, the evidence indicates it confused Ms. Capshaw), but took no steps to correct the problem until December 1994.

We conclude that a material fact issue exists regarding when TxDOT had notice that the traffic signal created a condition that needed to be corrected, as well as whether the department corrected the problem within a reasonable time. Because material fact issues existed, summary judgment was improperly granted.

■■■ TxDOT further argues that the summary judgment was correct because the Capshaws cannot raise fact questions regarding three elements of their case under a premises liability theory. Whether the court is to use the duty imposed by a premises liability theory or a special defect theory is undetermined and contested. The Capshaws contend that the traffic signal created a special defect. TxDOT maintains that this lawsuit presents only a premises defect claim. The determination of whether a condition is a premise defect or a special defect is ordinarily a question of duty involving statutory interpretation and thus is an issue of law for the court to decide.[20] When the facts surrounding the condition are disputed, however, the trier of fact must decide the underlying fact issues which determine the legal issue of whether it constitutes a special or premise defect.[21] Consequently, the trial court could not have applied the premises liability duty as a matter of law to grant TxDOT's motion for summary judgment. Thus, the trial court erred in granting TxDOT's motion for summary judgment.[22] Appellant's second point of error is sustained.

### CONCLUSION

We reverse and remand this case to the trial court for proceedings consistent with this opinion.

---

20. *McCreight v. City of Cleburne,* 940 S.W.2d 285, 288 (Tex.App.—Waco 1997, writ denied).

