**TEXAS DEPARTMENT OF TRANSPORTATION, Appellant,**

**v.**

**Rick GARRISON, Steve Garrison, Jamie Garrison, Michelle Vaughn, individually and as representatives of the Estate of Susan Louise Wilson, deceased; Jessie Bush, Helen Bush, Homer Scott, Martha Scott, and Misty Mosley, Appellees.**

No. 09–03–043 CV.

Court of Appeals of Texas, Beaumont.

Submitted Sept. 4, 2003.

Decided Oct. 30, 2003.

Greg Abbott, Atty. Gen., Barry R. McBee, First Asst. Atty. Gen., Jeffrey S. Boyd, Deputy Atty. Gen. for Litigation, Grady Click, Donald E. Garner, Asst. Attys Gen., Chief, Transportation Division, Austin, for appellant.

Diane K. Shaw, Clayton Melton, Shaw & Associates, P.C., Dallas, for appellees.

Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

PER CURIAM.

Homer and Martha Scott, Rick, Steve, and Jamie Garrison, Michelle Vaughn, Helen and Jessie Bush, and Misty Mosley, appellees, brought suit against the Texas Department of Transportation ("TXDOT") regarding signalization of an intersection where their four separate motor vehicle accidents occurred. The trial court denied TXDOT's plea to the jurisdiction. TXDOT brings this appeal, claiming the sovereign immunity doctrine bars appellees' claims

under the Texas Tort Claims Act. We agree and therefore reverse the trial court's decision and dismiss the appellees' claims for want of jurisdiction.

The accidents occurred at the crossover intersection of U.S. 59 and Main Street in Patton Village, Montgomery County, Texas, after TXDOT sent a letter dated November 27, 1996, ("Letter") to State Representative Bob Rabuck.[1] In the Letter, TXDOT's Executive Director informed Representative Rabuck that, according to information received from its Houston District, TXDOT had obtained "Federal Safety funds of $120,000, which [would] be used to replace the warning flasher at Main Street in Patton Village with a 'stop and go' signal and also [would] be used to place advance warning signs and area safety lighting."

However, TXDOT's engineers determined that the installation of a traffic signal would increase the number of accidents because of the high approach speeds. The engineers suggested upgrading the existing flashing beacon and installing special intersection signs, and also assigning a high priority to the construction of overpasses at this and two other area intersections. TXDOT did not install the stop and go signal, but instead upgraded the flashing beacon and installed special intersection signs.

Appellees maintain the Letter indicates a decision was made to install a stop and go signal at the intersection, and, thus, subject matter jurisdiction is proper because the State lost its immunity from suit when it failed to implement that decision. In its first issue, TXDOT contends it has the discretion to change a decision without

---

1. The four accidents occurred between June 22, 1997, and February 4, 1998. One involved Susan Louise Wilson who subsequently died as a result of the injuries received; appellees Rick, Steve, and Jamie Garrison, and Michelle Vaughn bring suit individually and on behalf of the decedent's estate.

waiving its immunity, and, thus, the appellees' claims are barred.

■ Unless waived, the long recognized doctrine of sovereign immunity protects the State, its agencies, and officials from lawsuits for damages. *Federal Sign v. Texas Southern University*, 951 S.W.2d 401, 405 (Tex.1997). However, the Texas Tort Claims Act ("Act") waives the State's sovereign immunity from suit for tort claims to the extent the Act creates liability. *See* TEX. CIV. PRAC. & REM.CODE §§ 101.002; 101.025(a) (Vernon 1997). One liability created by the Act is for personal injuries and death "caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM.CODE § 101.021(2) (Vernon 1997).

■ But, the Act also establishes various exceptions to this general waiver of immunity. Section 101.056 provides for the State to retains its sovereign immunity from claims based on:

(1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or

(2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

TEX. CIV. PRAC. & REM.CODE § 101.056 (Vernon 1997). Thus, the State retains its immunity from suits arising from its discretionary acts and omissions. *Tex. Dept. of Transp. v. Garza*, 70 S.W.3d 802, 806 (Tex.2002).

In addition, there are other applicable exceptions specifically concerning traffic and road control devices. Section 101.060(a) states that the Act does not waive the State's immunity for claims arising from:

(1) the failure of a governmental unit initially to place a traffic or road sign, signal, or warning device if the failure is a result of discretionary action of the governmental unit;

(2) the absence, condition, or malfunction of a traffic or road sign, signal, or warning device unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice; or

(3) the removal or destruction of a traffic or road sign, signal, or warning device by a third person unless the governmental unit fails to correct the removal or destruction within a reasonable time after actual notice.

TEX. CIV. PRAC. & REM.CODE § 101.060(a) (Vernon 1997).

■ The Texas Tort Claims Act "does not waive immunity for decisions about highway design or what types of safety features to install, because these decisions involve the exercise of discretion." *State ex rel. State Dept. of Highways and Public Transp. v. Gonzalez*, 82 S.W.3d 322, 326–27 (Tex.2002). Such decisions are the very ones for which immunity is retained under section 101.060(a) of the Act. *Tex. Dept. of Transp. v. Bederka*, 36 S.W.3d 266, 271 (Tex.App.-Beaumont 2001, no pet.). But, once a governmental unit decides to install a particular traffic signal, that decision must be implemented within a reasonable time. *Id.* (citing *Zambory v. City of Dallas*, 838 S.W.2d 580, 582–83 (Tex.App.-Dallas 1992, writ denied)). The implementation of a policy decision, unlike the actual decision making, is nondiscretionary and waives immunity. *Id.* at 272.

Appellees contend the Letter clearly indicates TXDOT had determined to utilize a stop and go signal, but failed to implement its policy. They further contend *Zambory*

supports their waiver of immunity argument. In *Zambory*, the appellate court recognized that a city could be liable for "negligent implementation of a discretionary act." *Zambory*, 838 S.W.2d at 582. However, the court, in reversing summary judgment, did not determine the city was liable but instead concluded a fact issue was present on whether the city council, its governing body, had made a decision to install a traffic signal. *Zambory*, 838 S.W.2d at 583.

 Here, the installation of a stop and go signal had received only preliminary approval. Since TXDOT commonly processes requests for funding assistance before preliminary construction plans have been prepared, the receipt of funds does not mean plans were complete. Further, after the Letter was sent, engineering evaluations of the site continued. And as early as January 8, 1997, (more than six months before the first of the four accidents here), TXDOT engineers recommended that a stop and go type signal should not be installed, but instead that the flashing beacon should be upgraded and special intersection signs be installed.

Moreover, no agreement between TXDOT and the City for a stop and go signal was ever prepared or authorized. And, under state regulations, agreement of the city is required for signal installations. 43 TEX. ADMIN. CODE § 25.5(b), (c) (2003). Instead, on August 19,1997, the Houston District submitted its plans, specifications, and estimates ("PS & E") regarding the upgraded flashing beacon to the State office for approval. On October 14, 1997, the City of Patton Village approved the agreement for upgrading the flashing beacon signal and on December 4, 1997, a contract was let.

The Letter shows only a preliminary plan to improve the intersection, not a "policy decision" for which TXDOT would be liable if it were implemented negligent-

ly. Instead, TXDOT's decision to upgrade the flashing beacons and install special intersection signs is clearly a decision about what types of safety features to install—a decision that involves the exercise of discretion and for which immunity is not waived. *See Gonzalez*, 82 S.W.3d at 326–27.

The trial court erred in denying TXDOT's plea to the jurisdiction. The ruling of the trial court is reversed, and judgment is rendered dismissing the case for lack of jurisdiction.

REVERSED AND RENDERED.