The CITY OF FORT WORTH,
Appellant,

v.

Noemi ROBLES, Individually and
as Heir of Cassandra Robles,
Appellee.

No. 2–01–039–CV.

Court of Appeals of Texas,
Fort Worth.

June 14, 2001.

Rehearing Overruled July 12, 2001.

Gerald Pruitt, Deputy City Atty., Karen Anderson, Luis E. Fierros, James A. Riddell, Asst. City Attys., Fort Worth, for Appellant.

Handy & Robinson, P.C., Michael Handy and Christian Ellis, Fort Worth, for Appellee.

Panel A: DAY, HOLMAN, and GARDNER, JJ.

## OPINION

DAY, Justice.

## I. INTRODUCTION

In this interlocutory appeal, Appellant, the City of Fort Worth (the "City"), appeals from the trial court's denial of its plea to the jurisdiction on the grounds that the doctrine of sovereign immunity bars Appellee Noemi Robles's claims under the Texas Tort Claims Act and Robles has failed to plead a deprivation of a federal right that would entitle her to protection under 42 U.S.C. section 1983. We reverse and render.

## II. BACKGROUND

On April 19, 1997, six-year-old Cassandra Robles was hit by a car and killed as she walked across the street near the intersection of Homan Avenue and Fifteenth Street in north Fort Worth. There were two-way stop signs on Fifteenth Street. However, Mr. Akbar, the owner of a grocery store at the corner of the intersection, had previously requested that the City place four-way stop signs at the intersection for the safety of pedestrians.

On April 21, 1997, the City sent a traffic engineer to the intersection, who determined that four-way stop signs should be installed. The City installed the traffic signal on April 23, 1997.

At the time of the accident, the City had a set policy to determine whether four-way

stop signs should be installed at an intersection. This policy required the president of the neighborhood association to request four-way stop signs if the intersection was in an area that was controlled by a neighborhood association. If the area was not so controlled, then the person requesting the signs must also send a letter signed by the owners of the property on the corners of the intersection. The City would then conduct a traffic count, upon completion of which, a minimum of two-thirds of the residents living within 600 feet of the intersection must vote in favor of the signs.

Robles sued the City for the death of her daughter under the Texas Tort Claims Act and 42 U.S.C. section 1983. Robles also sought damages under the wrongful death and survival statutes. The City filed a plea to the jurisdiction, which the trial court denied.

## III. PLEA TO THE JURISDICTION

A plea to the jurisdiction is a dilatory plea by which a party contests the trial court's authority to determine the subject matter of the cause of action. *See, e.g., State v. Benavides,* 772 S.W.2d 271, 273 (Tex.App.—Corpus Christi 1989, writ denied). Because the question of subject matter jurisdiction is a legal question, we review the trial court's ruling on a plea to the jurisdiction under a de novo standard of review. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998), *cert. denied,* 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999); *Denton County v. Howard,* 22 S.W.3d 113, 118 (Tex.App.—Fort Worth 2000, no pet.)

In determining whether jurisdiction exists, we look to the allegations in the pleadings, accept them as true, and construe them in favor of the pleader. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993); *City of Sagi-*

*naw v. Carter,* 996 S.W.2d 1, 2–3 (Tex. App.—Fort Worth 1999, pet dism'd w.o.j.). We also consider evidence relevant to the jurisdictional issue that was before the trial court when it ruled on the plea. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 555 (Tex.2000) (explaining that "a court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. The court should, of course, confine itself to the evidence relevant to the jurisdictional issue.").

## IV. TEXAS TORT CLAIMS ACT

The doctrine of sovereign immunity, unless waived, protects the State of Texas, its agencies, and its officials from lawsuits for damages, absent the State's consent to be sued. *Umar v. Scott,* 991 S.W.2d 512, 518 (Tex.App.—Fort Worth 1999, no pet.). The party suing a governmental entity must allege consent to suit either by statute or express legislative permission. *Mo. Pac. R.R. v. Brownsville Navigation Dist.,* 453 S.W.2d 812, 813–14 (Tex.1970). The legislature has waived governmental immunity in the Texas Tort Claims Act, chapter 101 of the civil practice and remedies code, and its predecessor statutes. TEX. CIV. PRAC. & REM.CODE ANN. § 101.025 (Vernon 1997). Under the Texas Tort Claims Act, a governmental unit, including a city, is liable for personal injuries and deaths proximately caused by a condition or use of personal or real property if the governmental unit would, were it a private person, be liable. TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1997); *City of Fort Worth v. Adams,* 888 S.W.2d 607, 611 (Tex.App.—Fort Worth 1994, writ denied), *cert. denied,* 516 U.S. 992, 116 S.Ct. 525, 133 L.Ed.2d 432 (1995). Section 101.0215(a) of the Texas Tort Claims Act provides that a municipal-

ity is liable under the Act for damages arising from its governmental functions, which are described as those enjoined on a municipality by law and given it by the State, to be exercised by the municipality in the interest of the general public. Tex. Civ. Prac. & Rem.Code Ann. § 101.0215(a) (Vernon Supp.2001). Some of the listed government functions covered by section 101.0215(a) are: warning signals; regulation of traffic; and maintenance of traffic signals, signs, and hazards. *Id.* However, the Tort Claims Act provides that the State and its municipalities retain their sovereign immunity in several situations, two of which are relevant in this case.

■ First, under section 101.056, the City preserves its immunity for an act "if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit." Tex. Civ. Prac. & Rem. Code Ann. § 101.056 (Vernon 1997). Therefore, if the City's action is discretionary, it does not waive its immunity. *State v. Rodriguez,* 985 S.W.2d 83, 85 (Tex.1999); *see also State v. Burris,* 877 S.W.2d 298, 299 (Tex.1994).

Second, under section 101.060, the City does not waive its sovereign immunity for claims arising from the placement of traffic and road control devices in certain circumstances. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.060 (Vernon 1997).

Section 101.060 specifically provides:

(a) This chapter does not apply to a claim arising from:

(1) the failure of a governmental unit initially to place a traffic or road sign, signal, or warning device if the failure is a result of discretionary action of the governmental unit;

(2) the absence, condition, or malfunction of a traffic or road sign, signal, or warning device unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice; or

(3) the removal or destruction of a traffic or road sign, signal, or warning device by a third person unless the governmental unit fails to correct the removal or destruction within a reasonable time after actual notice.

(b) The signs, signals, and warning devices referred to in this section are those used in connection with hazards normally connected with the use of the roadway.

(c) This section does not apply to the duty to warn of special defects such as excavations or roadway obstructions.

*Id.*

Robles argues that her claims fall within section 101.060(a)(2). Under subsection (a)(2), immunity is retained unless the absence, condition, or malfunction of a traffic sign, signal, or warning device is not corrected by the governmental unit within a reasonable time after notice. *Id.* § 101.060(a)(2). The City contends that traffic signals cannot be absent until the City makes a decision to install the signals, which the City did not do until after Cassandra's death in this case. Instead, the City alleges that this case involves a situation in which Robles is actually arguing about the City's decision to initially install the stop signs on Homan Avenue, thereby requiring analysis under section 101.060(a)(1). Robles counters that the City made its initial decision about the placement of stop signs at the intersection when it placed the two stop signs on Fifteenth Street. As such, Robles argues that the City's failure to erect four-way stop signs at the intersection after Akbar's request placed the City on notice of the stop signs' absence. Therefore, we must determine whether the signs were "absent" from the intersection.

The City relies on *City of San Antonio v. Schneider* as support for its contention that the signs were not absent at the time of the accident. 787 S.W.2d 459, 468 (Tex. App.—San Antonio 1990, writ denied). *Schneider* involved a situation in which Schneider had stopped to help the occupant of a car involved in an accident and was injured when a fire truck was unable to stop on the wet road and hit the car. *Id.* at 460–61. In *Schneider*, the road that was the object of the suit became slippery when it rained; however, there were no signs warning drivers of the danger. *Id.* at 461. The City of San Antonio agreed to place speed advisory signs and resurface the road, but the changes had not been made as of the date of the accident. *Id.* The City argued that under section 101.060(a)(2), it was shielded from liability unless the failure was not corrected within a reasonable time. *Id.* at 468. Concluding that subsection (a)(2) did not apply to the special defect presented in that case, the *Schneider* court explained that, "Subsection (a)(2) pertains to a sign or warning device that was in place at one time but was subsequently removed, is malfunctioning or is endowed with some condition that should be corrected by the governmental unit." *Id.*

Robles asserts that this court has already determined that a sign does not have to be in place before it can be absent. *See Miller v. City of Fort Worth*, 893 S.W.2d 27, 29, 33–38 (Tex.App.—Fort Worth 1994, writ dism'd by agr.). In *Miller*, the family of a man who was killed in a car accident at an intersection that had no traffic control device sued the City of Fort Worth under the Texas Tort Claims Act. *Id.* at 29, 31–32. This court found that the City's failure to install a stop sign or its failure to make a decision to install a stop sign fell within the City's discretionary powers; therefore, the City was exempt from liability under section 101.056 for fail-

ing to install the stop sign. *Id.* at 32–33. However, without discussing the requirements of subsections (a)(1) or (a)(2) of section 101.060, this court proceeded to discuss whether the City had notice that a dangerous condition existed at the intersection where the collision occurred in order to determine whether the City was brought under the purview of section 101.060. *Id.* at 33. We decided that the City had not received notice of the need for a stop sign at the intersection where the accident occurred. *Id.* at 38. Consequently, we held that the Millers' claims against the City were barred under section 101.060. *Id.*

Robles also cites *Reyes v. City of Houston*, 4 S.W.3d 459, 462 (Tex.App.—Houston [1st Dist.] 1999, pet. denied) for support. The *Reyes* court concluded that the City of Houston could be sued under section 101.060(a)(2) for an accident that occurred due to the "absence of a barricade" at the end of a dead-end street. *Id.* at 462. The court did not discuss the meaning of "absence" even though the case implies that the City had not initially placed a barricade at the end of the street before the accident. *Id.* Therefore, Robles argues that we should apply subsection (a)(2) to the facts of this case.

■ We find the *Schneider* court's analysis of subsection (a)(2) compelling. To hold that subsection (a)(2)'s absence requirement also applied to traffic control devices that had not been installed would nullify subsection (a)(1). Subsection (a)(1) exempts a governmental unit from liability for the failure to initially install a traffic sign or signal as long as its failure to install the sign was the result of discretionary action. TEX. CIV. PRAC. & REM.CODE ANN. § 101.060(a)(1). Therefore, subsection (a)(1) clearly applies to the initial placement of traffic signs. *Id.* Conse-

quently, subsection (a)(2), when read in conjunction with subsection (a)(1), would logically apply to the traffic signs after they are initially installed. This is further supported by the other language of subsection (a)(2). Subsection (a)(2) discusses the "absence, condition, or malfunction of a traffic or road sign." *Id.* § 101.060(a)(2). The condition or malfunction of a traffic or road sign is only possible if a traffic or road sign is in place. A traffic sign or signal cannot malfunction if it had never been installed. Likewise, a party cannot give the State notice of a condition of a sign or signal if there is not a sign or signal in place about which to complain. Therefore, because the Legislature included in subsection (a)(1) the situation in which the governmental unit had not placed a traffic control device due to its discretion, and because the other two situations included in subsection (a)(2) become relevant once a traffic control device is in place, we agree with *Schneider* that "absence" in subsection (a)(2) only applies to traffic control signs and signals that were installed, but for some reason are no longer in place. However, we believe that this is too narrow of an application.

■ The placement of stop signs is discretionary in nature. *Johnson v. Tex. Dep't of Transp.*, 905 S.W.2d 394, 397–98 (Tex.App.—Austin 1995, no writ) (explaining that stop sign placement was design decision shielded by sovereign immunity); *Shives v. State*, 743 S.W.2d 714, 717 (Tex. App.—El Paso 1987, writ denied). However, once the discretionary body decides to install a particular traffic signal that decision must be implemented within a reasonable time. *Tex. Dep't of Transp. v. Bederka*, 36 S.W.3d 266, 271 (Tex.App.—Beaumont 2001, no pet.); *Zambory v. City of Dallas*, 838 S.W.2d 580, 582–83 (Tex. App.—Dallas 1992, writ denied). *Bederka* explained that the implementation of a pol-

icy decision is nondiscretionary and waives immunity. *Bederka*, 36 S.W.3d at 272. Therefore, if the traffic device is not installed after the policy decision is made, then it would constitute "absence" under 101.060(a)(2). *Id.* We believe *Bederka's* analysis is compelling. Therefore, the logical counterpart to *Schneider's* definition of "absence" in subsection (a)(2) is when a governmental unit exercises its discretion in deciding to install a traffic signal, but does not implement that policy decision within a reasonable amount of time.

■ The evidence establishes that there were two-way stop signs on Fifteenth Street at the time of the accident. However, there is no evidence that the City decided to place four-way stop signs at the intersection before the accident. In fact, the only evidence suggests that the City did not decide to install the four-way stop signs until three days after the accident had occurred. Robles even concedes that the City did not decide to place four-way stop signs at the intersection until after the accident. Consequently, because there had never been four-way stop signs initially placed at the intersection, and because there is no evidence that the City had made a decision to install four-way stop signs at the intersection before the accident, we conclude that the signs were not absent pursuant to subsection (a)(2). As such, subsection (a)(2) is not controlling in this case, and we must analyze the City's plea to the jurisdiction under subsection (a)(1).

■ Under subsection (a)(1), a governmental unit retains its immunity if the failure to initially place a traffic sign is the result of its discretionary action. TEX. CIV. PRAC. & REM.CODE ANN. § 101.060(a)(1). An act is discretionary if it requires exercising judgment and the law does not mandate performing the act with such precision that nothing is left to discretion or judgment.

*Rodriguez,* 985 S.W.2d at 85. As we have already explained, the placement of stop signs is a discretionary act. *Johnson,* 905 S.W.2d at 397–98. However, that discretion can be waived if the governmental unit makes a policy decision to install a traffic device, but fails to implement that policy decision within a reasonable time. We have already discussed whether the City forfeited its discretion in this case. We have also concluded that the City had not yet exercised its discretion to install the four-way stop signs at the intersection before the accident. Therefore, the City retained its discretion to place four-way stop signs at the intersection and was immune from liability under section 101.060(a)(1). We sustain the City's first point and overrule *Miller* to the extent that it conflicts with our present holding.

## V.  SECTION 1983 CLAIM

■ In its second point, the City argues that its failure to install four-way stop signs at the intersection did not violate Robles's Fifth and Fourteenth Amendment rights under 42 U.S.C. section 1983; therefore, the trial court erred in not granting its plea to the jurisdiction. Title 42 U.S.C. section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983 (Supp.2000). A cause of action under this section involves two essential elements: (1) the conduct complained of was committed by a person acting under a color of state law, and (2) the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or the laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981).

Robles asserts in her pleadings that Cassandra's injuries deprived her of rights protected by the Fifth and Fourteenth Amendments to the United States Constitution. Specifically, Robles contends that Cassandra was deprived of her "right to be free of deprivation of life and liberty without due process of law and equal protection under the laws." Robles alleges that "The ... [Four Way Stop] Policy of the City of Fort Worth w[as] that of intentional discriminatory conduct or discriminatory purpose toward the minorities in the north Fort Worth neighborhood living near Homan Avenue and 15th Street."

■ It is well established that 42 U.S.C. section 1983 does not itself create substantive rights; it merely provides a remedy for federal rights established elsewhere. *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 816, 105 S.Ct. 2427, 2432, 85 L.Ed.2d 791 (1985); *Wilson v. Garcia,* 471 U.S. 261, 278, 105 S.Ct. 1938, 1948, 85 L.Ed.2d 254 (1985); *Whitton v. City of Houston,* 676 F.Supp. 137, 139 (S.D.Tex. 1987). To sustain an action based on section 1983, Robles must establish two elements: (1) that the City deprived her of a right secured by the Constitution or laws of the United States; and (2) that the City was an entity acting under color of state law, custom, or usage. *Parratt,* 451 U.S. at 535, 101 S.Ct. at 1913; *Whitton,* 676 F.Supp. at 139. Section 1983 does not provide a remedy for "any and all injuries inflicted by persons acting under color of state law." *Washington v. D.C.,* 802 F.2d 1478, 1480 (D.C.Cir.1986). The deprivation must be of constitutional magnitude. *Whitton,* 676 F.Supp. at 139.

The state action Robles relies upon is the City's policy and custom to determine where to place four-way stop signs. Specifically, Robles focuses her argument on the City's "custom ... to tolerate an underachieving Traffic Engineering Department, with no delegation or communication, and no sense for timeliness to meet deadlines." Robles alleges that this, coupled with the City's failure to respond to citizen complaints regarding the need for stop signs, results in a tort that rises to constitutional magnitude. However, Robles has provided no authority in her brief that explains how the City's alleged failure to comply with its policy regarding the placement of four-way stop signs invokes one of her constitutional rights.

The Fifth Circuit Court of Appeals was confronted with a similar question in *Hull v. City of Duncanville*, 678 F.2d 582, 584 (5th Cir.1982). The *Hull* court had to decide whether a plaintiff implicated a federal right that could be redressed under section 1983. *Id.* at 583–85. In *Hull*, the plaintiff sued the City for damages arising from a collision at a railroad crossing on the basis that the City was negligent in its failure to enforce its speed limit or to maintain crossing and traffic signals. *Id.* The plaintiff argued that *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), provided authority for his proposition that "a section 1983 action may be based on no more than a municipal policy, custom, or administrative decision that amounts to a deliberate deprivation of a plaintiff's right to be free from bodily injury." *Id.* at 584. The *Hull* court explained, however, that *Monell* simply concerned whether a municipality could be held liable under section 1983, but it had no relevance to the decision of whether the deprivation of a federal right is implicated. *Id.* at 584–85. The court further explained that

No authority ... supports the plaintiff['s] ... contention that a right secured to an individual by the federal constitution or law is implicated when a municipality fails to enact or to enforce an ordinance that may help to protect him from personal injury to result from the negligence of some non-governmental person.

*Id.* at 585.

■ This is the very basis of Robles's claim. The City already had an ordinance to deal with the placement of four-way stop signs at intersections in the city. However, Robles complains that the City either failed to implement a more appropriate ordinance or was untimely in enforcing the ordinance it had in place at the time of the accident. Either argument is covered by *Hull's* reasoning. Whether the City failed to enforce or timely enforce its ordinance does not implicate the federal constitution or federal law. *Id.* Therefore, based on the authority provided in *Hull*, we conclude that Robles did not complain of the deprivation of a federal right that invokes the protection of section 1983. As such, Robles's pleading was insufficient to invoke the trial court's jurisdiction over her section 1983 claim. Because we conclude that the City was entitled to have its plea to the jurisdiction granted, we sustain the City's second point.

## VI. VERIFIED PLEA

■ Robles alleges that the trial court did not err in denying the City's plea to the jurisdiction because the City's plea was not verified. Rule 93 of the rules of civil procedure governs the types of pleas that must be verified. *See* TEX.R. CIV. P. 93. Rule 93 specifically provides that "A pleading setting up any of the following matters, *unless the truth of such matters appears of record*, shall be verified by affidavit." *Id.* (emphasis added). In this case, the City

does not challenge the facts established by Robles. Instead, the City argues that even taking those facts that Robles pled as true, the suit cannot proceed as a matter of law. The record affirmatively demonstrates the deficiency of Robles's pleadings. Consequently, the City falls within the exception provided in rule 93 and was not required to verify its plea.

## VII. CONCLUSION

Having sustained the City's two points, we overrule the trial court's judgment and render judgment granting the City's plea to the jurisdiction.