COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-02-323-CV
  
  
AMY SIPES AND TANA (TREVINO) WADDELL                         APPELLANTS
   
V.
   
CITY OF GRAPEVINE                                                                APPELLEE
  
  
------------
 
FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
I. Introduction
        Amy 
Sipes and Tana Trevino n/k/a/ Tana Waddell appeal the trial court’s summary 
judgment in favor of the City of Grapevine. In three issues on appeal, 
appellants assert that the City did not establish as a matter of law that it is 
immune from suit, that its actions were not a proximate cause of appellants’ 
injuries, or that it did not receive actual notice of Trevino’s claim. We 
affirm in part and reverse and remand in part.
II. Factual and Procedural Background
        Appellants 
were injured in an automobile accident on November 28, 1997, as they traveled to 
the newly opened Grapevine Mills Mall. Following the instructions for mall 
traffic on a large, electronic message board, they exited on State Highway 
Business 114 and traveled northbound on Business 114 to the intersection of 
Business 114 and Highway 26/Northwest Highway, which was under construction. At 
the intersection, Sipes, who was driving, stopped at the temporary stop sign and 
noted that the pavement markings were confusing because “there were lines 
going everywhere.” Her vision was obstructed by concrete traffic barricades 
(also referred to as jersey barriers), barrels, and a “road closed” sign to 
the left of her vehicle. As Sipes “inched out” from behind the temporary 
stop sign, a pickup truck traveling eastbound at 47 miles per hour on Highway 26 
struck the driver’s door of her vehicle. Both Sipes and Trevino were injured.
        Appellants 
sued the City, the Texas Department of Transportation (TXDOT), Sunmount 
Corporation, and Jerry Gaston, the pickup driver. Appellants sued the City for 
negligence and gross negligence and alleged that the City and TXDOT entered into 
a joint enterprise to expand Northwest Highway to accommodate mall traffic. 
Appellants also pleaded that the City was not immune from suit because it 
engaged in proprietary acts that resulted in appellants’ injuries.
        The 
City filed a motion for summary judgment and two supplemental motions for 
summary judgment as appellants amended their petition after the first and second 
motions were filed. In its motions, the City asserted that it was a governmental 
entity entitled to sovereign immunity, its sovereign immunity had not been 
waived, Trevino did not give statutorily required notice, and the actions of 
others were the sole cause of appellants’ injuries. After a hearing, the trial 
court granted the City’s motions for summary judgment and severed 
appellants’ claims against the City from the underlying case.
        On 
appeal, appellants claim that the City failed to establish as a matter of law 
that it is immune from suit and that there are issues of material fact 
concerning the City’s affirmative defense of sovereign immunity. Appellants 
also claim that genuine issues of material fact exist concerning whether the 
City’s actions were the proximate cause of appellants’ injuries and whether 
the City received actual notice of Trevino’s claim.
III. Standard of Review
A. Characterization of the Motions
        With 
one exception, the City did not state in its motion or supplemental motions for 
summary judgment whether it was seeking a traditional summary judgment or a 
no-evidence summary judgment, and it intermixed language from the traditional 
summary judgment rule and the no-evidence summary judgment rule throughout its 
motions and its briefs to this court. Compare Tex. R. App. P. 166a(c) with Tex. R. App. P. 166a(i). The two forms 
of summary judgment are distinct and invoke different standards of review. Adams 
v. Reynolds Tile & Flooring, Inc., 120 S.W.3d 417, 419-20 (Tex. 
App.—Houston [14th Dist.] 2003, no pet.).
        A 
summary judgment motion must give fair notice to the non-movant of the basis on 
which the summary judgment is sought. Tex. 
R. App. P. 166a; Waite v. Woodard, Hall & Primm, 137 S.W.3d 
277, 280 (Tex. App.—Houston [1st Dist.] 2004, no pet.). If a motion 
clearly sets forth its grounds and otherwise meets rule 166a’s requirements, 
it is sufficient to raise both traditional and no-evidence grounds for summary 
judgment, even if the motion does not clearly delineate or segregate those 
grounds. Binur v. Jacobo, 135 S.W.3d 646, 651 (Tex. 2004).
        In 
its motion for summary judgment, the City asserts that there is no evidence of 
proximate cause as to the condition or use of any tangible property and 
expressly asserts that it is entitled to summary judgment on that ground 
pursuant to rule 166a(i). None of the other grounds raised in the motion or 
supplemental motions refer to either rule 166a(c) or 166a(i), but use both 
“matter of law” language and words such as “failed to establish” or 
“cannot establish.” Because the City gave appellants notice that it sought a 
no-evidence summary judgment on the proximate cause issue, but not concerning 
the other grounds raised in the motions, we construe the portion of the motion 
concerning the proximate cause issue to have been brought under rule 166a(i) and 
the remainder of the City’s grounds for summary judgment to have been brought 
under rule 166a(c). Binur, 135 S.W.3d at 651; Waite, 137 S.W.3d at 
280.
        When 
a party moves for summary judgment under both rules 166a(c) and 166a(i), we will 
first review the trial court’s judgment under the standards of rule 166a(i). Ford 
Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004). If the appellants 
failed to produce more than a scintilla of evidence under that burden, then 
there is no need to analyze whether appellee’s summary judgment proof 
satisfied the less stringent rule 166a(c) burden. Id.
B. Rule 166a(i) Standard of Review
        After 
an adequate time for discovery, the party without the burden of proof may, 
without presenting evidence, move for summary judgment on the ground that there 
is no evidence to support an essential element of the nonmovant's claim or 
defense. Tex. R. Civ. P. 166a(i). 
The motion must specifically state the elements for which there is no evidence. Id.; 
Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 207 (Tex. 2002). The 
trial court must grant the motion unless the nonmovant produces summary judgment 
evidence that raises a genuine issue of material fact. See Tex. R. Civ. P. 166a(i) & cmt.; S.W. 
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002).
        We 
review the evidence in the light most favorable to the party against whom the 
no-evidence summary judgment was rendered. Johnson, 73 S.W.3d at 197; Morgan 
v. Anthony, 27 S.W.3d 928, 929 (Tex. 2000). If the nonmovant brings forward 
more than a scintilla of probative evidence that raises a genuine issue of 
material fact, then a no-evidence summary judgment is not proper. Moore v. K 
Mart Corp., 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied).
C. Rule 166a(c) Standard of Review
        In 
a traditional summary judgment case, the issue on appeal is whether the movant 
met its summary judgment burden by establishing that no genuine issue of 
material fact exists and that the movant is entitled to judgment as a matter of 
law. Tex. R. Civ. P. 166a(c); S.W. 
Elec. Power Co., 73 S.W.3d at 215; City of Houston v. Clear Creek Basin 
Auth., 589 S.W.2d 671, 678 (Tex. 1979). The burden of proof is on the 
movant, and all doubts about the existence of a genuine issue of material fact 
are resolved against the movant. S.W. Elec. Power Co., 73 S.W.3d at 215; 
Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999); Great Am. 
Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 
1965).
        When 
a governmental unit raises the affirmative defense of sovereign immunity in a 
summary judgment motion, it must establish the affirmative defense as a matter 
of law. See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988 
S.W.2d 746, 748 (Tex. 1999); Ryland Group, Inc. v. Hood, 924 S.W.2d 120, 
121 (Tex. 1996); Thompson v. City of Corsicana Hous. Auth., 57 S.W.3d 
547, 552 (Tex. App.—Waco 2001, no pet.). Once the movant establishes sovereign 
immunity as a matter of law, the burden of production shifts to the non-movant 
to establish a waiver of immunity. Thompson, 57 S.W.3d at 552. Even 
though the burden of production shifts, the burden of proof remains with the 
movant to negate any issues raised by the non-movant and conclusively establish 
its entitlement to summary judgment as a matter of law. Id.
IV. Sovereign Immunity
        In 
its summary judgment motions, the City asserted that it enjoyed sovereign 
immunity because (1) the City’s exercise of discretion is not a basis for 
liability, (2) there was no condition or use of tangible property owned or 
controlled by the City that proximately caused appellants’ injuries, (3) any 
condition at the intersection was only a premises defect of which Sipes had been 
warned by others, and (4) it was not engaged in any proprietary function that 
constituted a waiver of immunity. Appellants contend that the trial court erred 
by granting summary judgment on any of these bases.
        Under 
the doctrine of sovereign immunity, the State and its agencies are generally 
immune from suit unless the State gives its consent to be sued. Fed. Sign v. 
Tex. S. Univ., 951 S.W.2d 401, 405 (Tex. 1997). The City, a governmental 
unit, is immune from both suit and liability for appellants’ injuries unless 
its immunity is waived by the terms of the Texas Tort Claims Act. See Tex. Civ. Prac. & Rem. Code Ann. 
§§ 101.021, 101.025 (Vernon 1997). The threshold inquiry is whether immunity 
has been waived under section 101.021, which states that "[a] governmental 
unit in the state is liable for . . . personal injury and death so caused by a 
condition or use of tangible personal or real property if the governmental unit 
would, were it a private person, be liable to the claimant according to Texas 
law." Id. § 101.021(2).
        There 
are exceptions to section 101.021(2)'s waiver provision, however. Even if waiver 
would be established under section 101.021, the City retains sovereign immunity 
for claims arising from "the absence, condition, or malfunction of a 
traffic or road sign, signal, or warning device unless the absence, condition, 
or malfunction is not corrected by the responsible governmental unit within a 
reasonable time after notice." Id. § 101.060(a)(2). Additionally, 
the State retains its sovereign immunity from claims based on
 
(1) the 
failure of a governmental unit to perform an act that the unit is not required 
by law to perform; or
 
(2) a 
governmental unit's decision not to perform an act or on its failure to make a 
decision on the performance or nonperformance of an act if the law leaves the 
performance or nonperformance of the act to the discretion of the governmental 
unit.
  
Id. § 101.056. 
In other words, the State remains immune from suits arising from its 
discretionary acts and omissions. See State v. Rodriguez, 985 
S.W.2d 83, 85-86 (Tex. 1999).
        But 
the City can be held liable for negligent implementation of a discretionary act. 
City of Fort Worth v. Robles, 51 S.W.3d 436, 440 (Tex. App.—Fort Worth 
2001, pet. denied); Tex. Dep’t of Transp. v. Bederka, 36 S.W.3d 266, 
271 (Tex. App.—Beaumont 2001, no pet.); Zambory v. City of Dallas, 838 
S.W.2d 580, 582 (Tex. App.—Dallas 1992, writ denied); see Tex. Civ. Prac. & Rem. Code Ann. § 
101.060(a)(2). Section 101.060 reiterates this principle within the specific 
context of traffic control devices:
  
(a) This 
chapter does not apply to a claim arising from:
 
(1) the 
failure of a governmental unit initially to place a traffic or road sign, 
signal, or warning device if the failure is a result of discretionary action of 
the governmental unit;
 
(2) the 
absence, condition or malfunction of a traffic or road sign, signal, or warning 
device unless the absence, condition or malfunction is not corrected by the 
responsible governmental unit within a reasonable time after notice; . . . .
 
  
Tex. Civ. Prac. & Rem. Code Ann. § 
101.060(a)(1) & (2) (emphasis added). Thus, the Act provides plaintiffs the 
opportunity to sue cities for claims arising from the absence, condition, or 
malfunction of any road sign, signal, or warning device, provided that the 
governmental unit had notice of the problem and failed to act within a 
reasonable time. Id.; Robles, 51 S.W.3d at 440; Zambory, 
838 S.W.2d at 583.
        A 
city’s initial decision-making process regarding whether to install a traffic 
control device is discretionary; however, once the city makes the decision to 
install a traffic control device, it has no discretion but to do so within a 
reasonable time. Robles, 51 S.W.3d at 442; Bederka, 36 S.W.3d at 
272; Zambory, 838 S.W.2d at 582-83. If the traffic control device is not 
installed after the policy decision is made to do so, then it would constitute 
“absence” under section 101.060(a)(2). Tex. Civ. Prac. & Rem. Code Ann. § 
101.060(a)(2); Robles, 51 S.W.3d at 442; Bederka, 36 S.W.3d at 
272. Thus, the Act waives immunity when the city exercises its discretion in 
deciding to install a traffic control device but does not implement that 
decision within a reasonable amount of time. Tex. Civ. Prac. & Rem. Code Ann. § 
101.060(a)(2); Robles, 51 S.W.3d at 442. Reasonableness is a fact issue 
for the trier of fact that is rarely appropriate in a summary judgment. Zambory, 
838 S.W.2d at 583.
        Appellants 
claimed that the City did not install the temporary traffic signal within a 
reasonable time after deciding that a temporary signal was needed. Appellants’ 
evidence filed in response to the City’s motion for summary judgment 
establishes that the traffic control plan, which was based on plans prepared by 
an engineering firm hired by the City, called for a permanent traffic control 
light at the intersection where the collision in question occurred but did not 
include any temporary traffic control devices for the intersection during 
construction. In August or September 1997, before construction began, the City 
had requested that a temporary traffic signal be installed at the intersection. 
After construction began in September, the City determined that installation of 
the temporary signal was a priority. After the mall opened in late October, the 
intersection became a high-accident site with a significant increase in 
collisions, the majority of which involved northbound vehicles on Business 114 
being hit by eastbound vehicles on Highway 26, as happened in this case.
        When 
TXDOT told the City that a traffic warrant study documenting the need for a 
temporary signal was required before it would approve the installation and that 
TXDOT did not have the funds to pay for a temporary signal, the City funded the 
warrant study, made funds available to pay for the temporary signal, and 
contacted a company to install the signal once TXDOT approval was obtained. On 
October 29, 1997, City officials met at the intersection, which they described 
as unsafe, to coordinate the scheduled November 7, 1997 installation of the 
temporary signal. But the temporary signal was not installed until December 5, 
1997, one week after appellants’ wreck.
        The 
City contends that it is entitled to immunity because it could not install the 
temporary signal without TXDOT’s approval. The City provided no evidence, 
however, of its attempts to follow-up on obtaining TXDOT approval after the City 
made the decision to install the temporary signal, nor did it show when TXDOT 
approval was actually obtained.[1]  The City’s 
Director of Public Works stated that he had no idea why the signal was not 
installed prior to appellants’ wreck. Likewise, the City’s Assistant 
Director of Public Works stated that he could not provide any reason why the 
City could not have erected the signal before appellants’ wreck.
        In 
this case, the City exercised its discretion and decided to install a temporary 
traffic signal at the intersection where appellants’ wreck occurred, but we 
conclude that a question of material fact exists concerning whether the City 
properly implemented its decision by installing the temporary traffic signal 
within a reasonable time thereafter. Thus, we hold that the trial court erred in 
granting summary judgment on appellants’ claim of negligent implementation of 
a discretionary act.
        Appellants 
asserted that a condition at the intersection consisting of traffic barricades, 
barrels, and a road closed sign obstructed their vision of traffic to the left 
of the intersection and, thus, caused the accident. In its summary judgment 
motions, the City asserted that no condition or use of tangible property owned 
or controlled by the City caused appellants’ injuries because the City did not 
own and had no authority concerning any tangible or real property at the 
intersection. In other words, the City asserts that it cannot be liable because 
it neither owned, used, nor controlled any property at the intersection. The 
City also claimed that appellants could produce no evidence that the use or 
condition of tangible property allegedly owned or controlled by the City 
proximately caused appellants’ injuries because any link between the property 
over which the City purportedly exercised control and appellants’ accident is 
too attenuated to be cognizable under the Act as the proximate cause of 
appellants’ injuries.
        There 
is no requirement under the Act that the City own the tangible property that 
causes the injury. Sem v. State, 821 S.W.2d 411, 415-16 (Tex. App.—Fort 
Worth 1991, no writ). The City may be liable in circumstances in which it 
assumes control over tangible personal property and the negligent exercise of 
that control results in personal injury. Id. Control may be established 
by evidence that the City assumed some responsibility for the traffic control 
devices at the intersection, even though that responsibility was not exclusive. See 
County of Cameron v. Brown, 80 S.W.3d 549, 556 (Tex. 2002). But the City is 
not liable for a condition of property at the intersection if it neither owned 
nor controlled the property. City of Denton v. Page, 701 S.W.2d 831, 835 
(Tex. 1986).
        Furthermore, 
while the property itself need not be the instrumentality of the alleged harm, 
there must be a direct and immediate relationship between the injury and the use 
or condition of the property. Cherqui v. Westheimer Street Festival Corp., 
116 S.W.3d 337, 349 (Tex. App.—Houston [14th Dist.] 2003, no pet.); 
Gonzales v. City of El Paso, 978 S.W.2d 619, 623 (Tex. App.—El Paso 
1998, no pet.). Property does not cause injury if it does no more than furnish 
the condition that makes the injury possible. Dallas County MHMR v. Bossley, 
968 S.W.2d 339, 341, 343 (Tex.), cert. denied, 525 U.S. 1017 (1998).
        The 
City supported its motions with evidence that the State owned the right-of-way 
at the intersection, maintained control over the construction project, and 
placed the traffic control devices at the intersection. The City had altered the 
traffic control devices to the right of the intersection but was criticized by 
the State for doing so and, before the accident, returned them to their original 
location. It was the placement of the traffic control devices to the left of the 
intersection, not to the right, that appellants claim obstructed their vision, 
allegedly causing them to enter the intersection where they were struck by 
oncoming traffic. We conclude that the placement of the traffic control devices 
by the City was merely an attenuated part of a sequence of events that resulted 
in appellants’ injuries or a condition that made the injuries possible, but it 
was not a proximate cause of those injuries. Accordingly, the trial court did 
not err by granting summary judgment on appellants’ claim that the City did 
not enjoy immunity under the Act’s condition or use of tangible property 
provision. Bossley, 968 S.W.2d at 343; Cherqui, 116 S.W.3d at 349; 
Gonzales, 978 S.W.2d at 623.
        In 
its summary judgment motions, the City also asserted that any defect at the 
intersection was a premises defect about which appellants had been warned by 
others. Appellants countered that the obstructions to their view at the 
intersection constituted a special defect that the City had a duty to warn them 
about. Liability for premises defects is implied under the Act because premises 
defects arise from a condition existing on real property. City of Midland v. 
Sullivan, 33 S.W.3d 1, 7 (Tex. App.—El Paso 2000, pet. dism’d w.o.j.). 
Section 101.021 of the Act waives sovereign immunity for premises liability 
claims. Tex. Dep’t of Transp. v. Able, 35 S.W.3d 608, 611 (Tex. 2000). 
The theories of liability are based on different standards of care owed. Id. 
Whether a condition is a special defect or a premises defect is a question of 
law. State Dep’t of Hwys. & Pub. Transp. v. Payne, 838 S.W.2d 235, 
238 (Tex. 1992) (op. on reh’g); Mogayzel v. Tex. Dep’t of Transp., 66 
S.W.3d 459, 464 (Tex. App.—Fort Worth 2001, pet. denied).
        The 
Act specifies that if the claim arises from a premises defect, the duty owed by 
the governmental entity to the claimant is the same duty that a private person 
would owe a licensee on private property unless the claimant paid for the use of 
the premises. Tex. Civ. Prac. & Rem. 
Code Ann. § 101.022(a) (Vernon 1997). The basic duty owed licensees is 
not to injure them willfully, wontonly, or through gross negligence. City of 
San Benito v. Cantu, 831 S.W.2d 416, 421 (Tex. App.—Corpus Christi 1992, 
no writ). This duty encompasses the duty to warn or make reasonably safe only if 
the governmental entity has actual knowledge and the claimant does not. Id.
        The 
limitation of duty concerning premises defects does not extend to special 
defects, however. See Tex. Civ. 
Prac. & Rem. Code Ann. § 101.022(b). Where there is a special 
defect, the governmental entity has the same duty to warn that one owes an 
invitee. Payne, 838 S.W.2d at 237. That duty requires an owner to use 
ordinary care to reduce or eliminate an unreasonable risk of harm created by a 
premises condition of which the owner is or reasonably should be aware. Id. 
Where a special defect exists, it is the duty of the governmental unit that owns 
or controls a roadway to warn of the defect even though that governmental unit 
did not create the defect. County of Harris v. Eaton, 573 S.W.2d 177, 
179-80 (Tex. 1978).
        Special 
defects are statutorily defined as “defects such as excavations or 
obstructions on highways, roads, or streets.” Id. at 179. Conditions 
also may be special defects even though they do not occur on the surface of the 
road. Payne, 838 S.W.2d at 238 n.3. A special defect must be something 
out of the ordinary course of events, however, rather than a long-standing, 
routine, or permanent defect. Villareal v. State, 810 S.W.2d 419, 422 
(Tex. App.—Dallas 1991, writ denied).
        Courts 
have defined “special defect” as something that presents an “unexpected 
and unusual danger to ordinary users of the highways,” which “unexpectedly 
and physically impair[s] a car’s ability to travel on the road.” Mogayzel, 
66 S.W.3d at 466 (quoting Payne, 838 S.W.2d at 238, and Rodriguez, 
985 S.W.2d at 85); see Sipes v. Tex. Dep’t of Transp., 949 S.W.2d 516, 
519-20 (Tex. App.—Texarkana 1997, writ denied) (listing examples of special 
and premises defects).
        By 
appellants’ own admissions, they knew they were entering a construction zone, 
and Sipes admitted that there were sufficient signs to alert her to unexpected 
dangers at the intersection. Traffic barricades, barrels, and signs are not 
unexpected or unusual and, in this case, they did not impair appellants’ 
ability to travel on the road. Therefore, we conclude that the obstruction about 
which appellants complain was a premises defect about which they had adequate 
warning. We hold that the trial court did not err by granting the City’s 
summary judgment on the premises liability issue.
        Appellants 
also contend that the City is liable as a member of a joint enterprise. The Act 
waives sovereign immunity for a governmental unit if “the governmental unit 
would, were it a private person, be liable to the claimant according to Texas 
law” for personal injury caused by a condition of tangible property. Tex. Civ. Prac. & Rem. Code Ann. § 
101.021(2). This waiver encompasses joint enterprise liability, which makes each 
party the agent of the other and holds each responsible for the negligent act of 
the other. Able, 35 S.W.3d at 613. The elements of a joint enterprise are 
(1) an agreement, express or implied, among the members of the group, (2) a 
common purpose to be carried out by the group, (3) a community of pecuniary 
interest among the members in that purpose, and (4) an equal right to a voice in 
the direction of the enterprise, which gives an equal right of control. Id.
        Appellants 
contend that the City entered into a joint enterprise with the State for the 
widening of Business 114. Appellants rely on the Advanced Funding Agreement for 
Standard Highway Systems (On-System) entered by the State and the City and the 
testimony of Robert Price to support this argument. According to the agreement, 
the State would improve the highway and the City would participate “by 
funding” a portion of the improvements. The agreement also makes reference to 
“items of work” that are the responsibility of the City and are to be 
carried out and completed by the City with no expense to the State, but it does 
not state what those responsibilities are. Robert Price testified that the City 
was responsible for providing access to businesses and for assisting the State 
in identifying and relocating utilities during the construction phase. The City 
did have a voice to be heard concerning limited aspects of the construction, but 
it did not have equal control over the construction project. Therefore, there 
was no joint enterprise, and the City established as a matter of law its right 
to summary judgment on that theory.
        Lastly, 
the City asserted that it did not receive notice of Trevino’s claim. The Act 
provides that a governmental unit is entitled to receive written notice of a 
claim not later than six months after the day that the incident giving rise to 
the claim occurred. Tex. Civ. Prac. & 
Rem. Code Ann. § 101.101(a) (Vernon 1997). The notice must reasonably 
describe the damage or injury claimed, the time and place of the incident, and 
the incident. Id. The Act also contains an exception to this written 
notice requirement when the governmental unit “has actual notice that death 
has occurred, that the claimant has received some injury, or that the 
claimant’s property has been damaged.” Id. § 101.101(c) (Vernon 
1997).
        Sipes 
provided the City with written notice, but Trevino did not. On appeal, 
appellants argue that the trial court erred by granting summary judgment against 
Trevino because they claim the City received actual notice of Trevino’s claims 
when the City’s police officers investigated the accident and through the 
police reports.
        The 
supreme court recently addressed the actual notice requirement in Texas 
Department of Criminal Justice v. Simons, in which it held that actual 
notice under section 101.101(c) requires that a governmental unit have knowledge 
of the information it is entitled to be given under section 101.101(a) and a 
subjective awareness that its fault produced or contributed to the claimed 
injury. No. 02-0479, 2004 WL 1533264, at *8 (Tex. July 9, 2004). The supreme 
court also explained that it is not enough that a governmental unit investigated 
an incident or should have known from the investigation that it might have been 
at fault. Id. Instead, the governmental unit must have subjective 
awareness of its fault to trigger the actual notice requirement. Id. The 
supreme court also noted that actual notice is a fact question when the evidence 
is disputed, but in many instances, actual notice can be determined as a matter 
of law. Id.
        Here, 
the police report indicates the time and place of the accident and describes the 
accident. It also states that Trevino was taken by ambulance to the hospital, 
but it makes no other mention of her injuries. The report described the road 
conditions as “obstructed view construction zone.” Based on this evidence, 
we conclude that, as a matter of law, Trevino failed to comply with the Act’s 
notice requirements because there is no evidence the City had subjective 
awareness that its fault produced or contributed to Trevino’s injuries. Thus, 
the trial court did not err in granting summary judgment on the notice issue.
 
V. Conclusion
        We 
reverse the trial court’s summary judgment in favor of the City on the issue 
of negligent implementation of a discretionary act issue and remand that issue 
to the trial court for trial. We affirm the remainder of the trial court’s 
summary judgment.
   
 
                                                          ANNE 
GARDNER
                                                          JUSTICE
  
 
PANEL B:   DAUPHINOT, 
GARDNER, and WALKER, JJ.
 
DELIVERED: August 31, 2004


NOTES
1.  
In its appellate brief, the City states that TXDOT approval was not obtained 
until after appellants’ accident, but it does not support this statement with 
a reference to the record, and this court’s independent review of the record 
has located no evidence showing when TXDOT approval was obtained.