**CITY OF GRAPEVINE,
Texas Petitioner,**

v.

**Amy SIPES and Tana (Trevino)
Waddell Respondents.**

No. 04–0933.

Supreme Court of Texas.

Argued Feb. 15, 2006.

Decided June 16, 2006.

Amy L. Saberian, Katherine Elizabeth Anderson, P. Michael Jung, Strasburger & Price, L.L.P., Dallas, for Petitioner.

Constance M. Maher, The Maher Law Firm, Arlington, David F. Farris, Lively, Padfield & Stout, Fort Worth, for Respondents.

Philip A. Lionberger, Ryan D. Clinton, Office of Attorney General, Lauren K. Ford, Texas Municipal League, Austin, for Amicus Curiae.

Chief Justice JEFFERSON delivered the opinion of the Court.

Under the Texas Tort Claims Act, a governmental unit retains immunity for claims based on the absence of a traffic signal unless the absence is not corrected by the governmental unit within a reasonable time after notice. TEX. CIV. PRAC. & REM. CODE § 101.060(a)(2). The trial court held that this provision immunized the City of Grapevine from liability based on its alleged negligence in failing to install a traffic signal within a reasonable time after initially deciding to do so. The court of appeals disagreed and reversed in part the trial court's judgment. Because we conclude that "absence," as used in subsection (a)(2), requires a prior presence, we reverse in part the court of appeals' judgment and render judgment dismissing the case for lack of subject matter jurisdiction.

## I

### Factual Background

The City of Grapevine and Grapevine Mills, L.L.C. ("Mills") entered into an

agreement pursuant to which Mills would build the Grapevine Mills Mall (the "Mall"). To accommodate increased traffic, the City planned to widen a nearby road, Business 114, from two lanes to five, as part of what was termed the Northwest Highway Expansion Project. The City hired an engineering firm to create a traffic control plan for the project; the resulting plan required a permanent traffic signal at the intersection of Business 114 and State Highway 26. The plan did not call for a temporary traffic signal during construction, however.

Because the intersection became a high accident site during construction, the City asked the Texas Department of Transportation (TxDOT) to erect a temporary traffic signal on the state-owned right-of-way. TxDOT responded that funding was inadequate for such a signal, so the City began to raise the necessary monies itself. The City hired a private consultant to prepare a warrant study justifying the need for a temporary signal, and on October 29, 1997, City officials met to coordinate its construction; the City planned to begin installation by November 7. The signal was not installed, however, until December 5.

On November 28, the day after Thanksgiving, Amy Sipes and her daughter, Tana Trevino Waddell, were traveling northbound on 114, heading to the newly opened Grapevine Mills Mall. At the intersection of 114 and 26, Sipes stopped at the temporary stop sign, but alleges that her vision was obstructed by concrete barriers, a "road closed" sign, and barrels. As Sipes inched her vehicle forward, it was struck by a truck driven by Jerry Gaston, who had been traveling eastbound on North-

west Highway. Both Sipes and Waddell sustained injuries.

Sipes, individually and as next friend of her daughter, sued the City and others for damages from injuries sustained in the accident. The City pleaded governmental immunity and moved for summary judgment on that and other bases.[1] Sipes responded, alleging in part that the City had notice of a dramatic increase in vehicular accidents at the intersection, and that the absence of a traffic signal or a four-way stop, "where a permanent signal was provided for," waived the City's immunity pursuant to section 101.060. The trial court granted the City's motion and severed the claims. Sipes appealed.

The court of appeals reversed and remanded the trial court's judgment in favor of the City on the traffic signal issue, but affirmed the remainder of the judgment. 146 S.W.3d 273, 284–85. The court held that, while the City exercised discretion in deciding to install a temporary traffic signal at the intersection, "a question of material fact exists concerning whether the City properly implemented its decision by installing the temporary traffic signal within a reasonable time thereafter." *Id.* at 281. We granted the City's petition for review.[2] 49 Tex. Sup.Ct. J. 747, 195 S.W.3d 689 (June 16, 2006).

## II

### Discussion The Tort Claims Act

■ The Texas Tort Claims Act (TTCA) waives immunity for personal injuries and deaths proximately caused by a condition or use of personal or real property if a governmental unit would, were it a private

---

1. The City also contended that Trevino did not give statutorily required notice and that the City's placement of traffic control devices to the left of the intersection (which Sipes alleged obstructed her vision) did not proxi-

mately cause the accident. 146 S.W.3d at 277, 281–84.

2. Sipes did not file a petition for review.

person, be liable. TEX. CIV. PRAC. & REM. CODE § 101.021(2). This use-of-property waiver, with which we have long grappled,[3] is an exception to the general rule of governmental immunity. Today we construe an exception to the exception: the waiver's non-application to claims arising from "the absence, condition, or malfunction of a traffic or road sign, signal or warning device unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice." *Id.* § 101.060(a)(2). Specifically, we must decide whether and under what conditions the absence of a traffic light may give rise to a governmental unit's liability under the TTCA.

Section 101.060, entitled "Traffic and Road Control Devices," identifies three exceptions to the TTCA's waiver of immunity provisions:

(a) This chapter does not apply to a claim arising from:

(1) the failure of a governmental unit *initially to place* a traffic or road sign, signal, or warning device *if the failure is a result of discretionary action of the governmental unit;*

(2) the *absence,* condition, or malfunction of a traffic or road sign, signal, or warning device *unless the absence,* condition, or malfunction *is not corrected by the responsible governmental unit within a reasonable time after notice;* or

(3) the removal or destruction of a traffic or road sign, signal, or warning device by a third person unless the governmental unit fails to correct the removal or destruc-

tion within a reasonable time after actual notice.

*Id.* § 101.060(a)(1)-(3) (emphasis added); *see also State v. Gonzalez,* 82 S.W.3d 322, 326–327 (Tex.2002).

Sipes agrees that the City's initial decision to install a traffic signal was discretionary, but contends that, once the City made that decision, it faced liability for negligently implementing it. The court of appeals agreed. 146 S.W.3d at 279–81. That court noted that governmental units may be liable for negligent implementation of discretionary acts, and that "[s]ection 101.060 reiterates this principle within the specific context of traffic control devices." *Id.* at 279–80. The court held that, "once the city makes the decision to install a traffic control device, it has no discretion but to do so within a reasonable time," and "[i]f the traffic control device is not installed after the policy decision is made to do so, then it would constitute 'absence' under section 101.060(a)(2)." *Id.* at 280 (citations omitted). Thus, the court concluded that "the Act waives immunity when the city exercises its discretion in deciding to install a traffic control device but does not implement that decision within a reasonable amount of time." *Id.* (citing TEX. CIV. PRAC. & REM. CODE § 101.060(a)(2); *City of Fort Worth v. Robles,* 51 S.W.3d 436, 442 (Tex.App.—Fort Worth 2001, pet. denied)).

We have not previously construed the term "absence" as used in subsection 101.060(a)(2). *But see Gonzalez,* 82 S.W.3d at 325 (using the phrase "the signs' absence" to describe two stop signs that were removed after being in place); *Alvarado v. City of Lubbock,* 685 S.W.2d 646,

---

**3.** *See, e.g., Tex. Dept. of Criminal Justice v. Miller,* 51 S.W.3d 583, 589–93 (Tex.2001) (Hecht, J., concurring); *id.* at 593–95 (Enoch, J., dissenting); *Univ. of Tex. Med. Branch v.* York, 871 S.W.2d 175, 177 (Tex.1994); *Lowe v. Tex. Tech Univ.,* 540 S.W.2d 297, 301–03 (Tex.1976) (Greenhill, C.J., concurring)

649 (Tex.1985) (holding that a speed-limit sign posting the wrong speed limit constituted "the absence of or condition of a traffic sign").[4]  As noted by the parties, our courts of appeals have differed in their interpretation of the term.  At least one has determined that an "absence" refers to "'a sign or warning device that was in place at one time but was subsequently removed,'" *see Texas Dep't of Transp. v. Sanchez,* 75 S.W.3d 24, 27 (Tex.App.—San Antonio 2001, pet. denied) (quoting *City of San Antonio v. Schneider,* 787 S.W.2d 459, 468 (Tex.App.—San Antonio 1990, writ denied)), while others have held that an "absence" occurs when a governmental unit exercises its discretion in deciding to install a traffic signal, but then fails to implement the decision within a reasonable time.  *See, e.g., Zambory v. City of Dallas,* 838 S.W.2d 580, 583 (Tex.App.—Dallas 1992, writ denied); *see also Tex. Dep't of Transp. v. Bederka,* 36 S.W.3d 266, 272 (Tex.App.—Beaumont 2001, no pet.) ("[T]he non-discretionary implementation of the policy decision to install a different device ... would be the absence of a particular traffic device under 101.060(a)(2) ...."); *Reyes v. City of Houston,* 4 S.W.3d 459, 462 (Tex.App.—Houston [1st Dist.] 1999, pet. denied).  As one court summarized: "Courts of appeals have interpreted subsection 101.060(a)(2) to mean that immunity is waived for the absence of a warning sign ... if the absence is due to the disappearance of an installed sign *or* the failure to install a sign [within a reasonable time] after the governing body authorized its installation." *Ihlo v. State,* 71 S.W.3d 494, 496 (Tex.App.—Austin 2002, no pet.)(emphasis added)(employing both definitions to conclude that warning signs were not absent); *see also Robles,* 51 S.W.3d at 442 (utilizing both definitions to

conclude that stop signs were not absent); *Sanchez,* 75 S.W.3d at 27 (applying first definition but recognizing the second); 19 WILLIAM V. DORSANEO III, TEXAS LITIGATION GUIDE § 293.12[9][b][ii] (2005) (noting dual definition).

Accordingly, we must decide whether an "absence," as used in (a)(2), requires a prior presence, or whether it includes the failure to install a traffic signal within a reasonable time after the decision is made to do so.  We begin by examining the statutory context within which "absence" is placed.  *See Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.,* 966 S.W.2d 482, 484 (Tex.1998) (stating that a court "must ... view a statute's terms in context").  Subsection (a)(1), which immediately precedes (a)(2), retains immunity for "the failure of a governmental unit *initially to place* a traffic or road sign, signal, or warning device *if the failure is a result of discretionary action of the governmental unit.*" TEX. CIV. PRAC. & REM. CODE § 101.060(a)(1) (emphasis added).  In subsection (a)(1), therefore, the Legislature expressed its intent that a governmental unit remains immune for an initial placement decision, provided it was the result of a discretionary act.  If (a)(2)'s "absence" included not just signs that were previously present, but those that had not yet been placed, it is difficult to imagine what would remain of (a)(1)'s immunity retention.  *See Robles,* 51 S.W.3d at 441 ("To hold that subsection (a)(2)'s absence requirement also applied to traffic signals that had not been installed would nullify subsection (a)(1)[, which] ... exempts a governmental unit from liability for the failure to initially install a traffic sign or signal as long as its failure ... was the result of a discretionary action.").

---

**4.**  In *Tex. Dep't of Transp. v. Garza,* 70 S.W.3d 802, 807 (Tex.2002), we described the sign at issue in *Alvarado* as "present[ing] a 'condition' within the meaning of the ... Act."

Indeed, characterizing a failure to initially install a traffic signal as an "absence" would contravene the Legislature's intent to immunize governmental units from claims based on the failure to initially place signals, provided such failures were the result of discretionary acts. *When* the City first installs a traffic signal is no less discretionary than *whether* to install it. The timing of implementation could be affected by the governmental unit's balancing of funding priorities, scheduling, traffic patterns, or other matters; to impose liability for the failure to timely implement a discretionary decision could penalize a governmental unit for engaging in prudent planning and paralyze it from making safety-related decisions. This sort of planning and execution is precisely the type of discretionary act for which the TTCA retains immunity. *See Texas Dep't of Transp. v. Garza*, 70 S.W.3d 802, 807 (Tex.2002) (noting that Legislature intended only a limited waiver of immunity in the TTCA). Thus, when subsections (a)(1) and (a)(2) are read together, (a)(2) logically applies only to those traffic signals that have already been installed.

We used similar reasoning in interpreting the term "condition," one of the trilogy of words ("absence, condition, or malfunction") used in (a)(2) to describe situations in which a governmental unit may face liability for claims involving traffic signals. In *Gonzalez*, vandals had removed stop signs at an intersection, and a fatal collision occurred soon thereafter. *Gonzalez*, 82 S.W.3d at 326–27. We considered whether the vandals' theft of the stop signs was a "condition" of the signs (and therefore governed by (a)(2)) or a "removal or destruction" of the signs (and thus covered by (a)(3)). *Id.* at 328–30. We concluded it was the latter:

> Gonzalez cannot characterize TxDOT's failure to make certain discretionary decisions affecting a stop sign's susceptibility to repeated vandalism as a failure to correct the sign's "condition" under subsection (a)(2) in order to sue under the Act.... To do so would contradict the Legislature's express intent to impose liability in cases involving a third person vandalizing a traffic sign only if the State fails to correct the vandalized sign after receiving actual notice [pursuant to (a)(3)].

*Id.* at 329.

Both subsections (a)(2) and (a)(3) refer, among other things, to the government's failure to replace a missing traffic device. In (a)(3), the statute provides a safe harbor if the government "corrects" a traffic device's removal; the safe harbor is provided in (a)(2), if the government "corrects" the absence of the device. *Compare* TEX. CIV. PRAC. & REM. CODE § 101.060(a)(2) *with* (a)(3). Logically, "correct" in (a)(3) must be predicated on the prior existence of a traffic device, because it modifies that device's "removal," and a failure to correct waives immunity only after the governmental unit has been put on actual "notice," presumably of a change in the device's status. So, at least with respect to (a)(3), the Legislature used the word "correct" to refer to replacing a device that has been removed. The question here is whether "correct" in (a)(2) similarly requires replacement of a *preexisting* device after its disappearance. We hold that it must. With respect to the cause of a traffic device's non-presence, there is only one material difference between the subsections. Subsection (a)(3) refers to a third person's intervention, whereas the cause in (a)(2) is not so qualified. Both subsections, however, reflect the Legislature's intent to waive a governmental unit's immunity only if it has been placed on "notice" of some change in status and fails to "correct" it within a reasonable time. A traffic signal that never

existed—as in this case—cannot serve to put a governmental unit on notice of something needing correction. Both removal and absence, therefore, presuppose a preexisting device.

Subsection (a)(2)'s other terms reinforce this conclusion. We have noted that the Legislature intended liability for a "condition" to attach only after a traffic signal is in place, as the term implies "not just any condition, but only something 'wrong' with the traffic sign or signal such that it would require correction ... after notice." *Garza*, 70 S.W.3d at 807 (noting "[t]he Legislature's placement of 'condition' in between 'absence' and 'malfunction,' coupled with the language that recants section 101.060(a)(2)'s retention of immunity when the 'condition' is 'not corrected' after notice"). Similarly, the Legislature's use of the term "malfunction" further evidences that (a)(2) was intended to apply only to existing traffic signals, as a signal must be in place before it can "malfunction" and require correction. *See Robles*, 51 S.W.3d at 442 ("A traffic ... signal cannot malfunction if it has never been installed.").

This interpretation comports with (a)(2)'s waiver of immunity only for governmental units that fail to correct problems "within a reasonable time after notice." TEX. CIV. PRAC. & REM. CODE § 101.060(a)(2). This language "requires the State to *maintain* traffic signs in a condition sufficient to perform their intended traffic-control function." *Gonzalez*, 82 S.W.3d at 327 (emphasis added) (construing (a)(2)). Maintenance involves ongoing caretaking; traffic signs that have not yet been installed cannot be maintained.

■ It is undisputed that the City's initial decision to install the traffic signal was discretionary. Unquestionably, therefore, the City would have retained immunity had it decided not to install the traffic signal. *See* TEX. CIV. PRAC. & REM. CODE § 101.060(a)(1). It makes little sense to waive immunity for a governmental unit that decides to install a signal and is endeavoring to do so. Considering the plain meaning of the statutory terms, the interplay between subsections (a)(1), (a)(2), and (a)(3), and the context within which "absence" is used in subsection (a)(2), we conclude that an "absence" requires a prior presence; that is, it does not apply to a governmental unit's initial installation of, or failure to initially install, a traffic signal. To the extent other opinions have held differently, we disapprove them.[5]

### III

### Conclusion

We reverse in part the court of appeals' judgment and render judgment dismissing the case for lack of subject matter jurisdiction. *See* TEX. R. APP. P. 60.2(c).

---

5. *See Ihlo v. State*, 71 S.W.3d 494, 495–96 (Tex.App.—Austin 2002, no pet.); *Tex. Dep't of Transp. v. Bederka*, 36 S.W.3d 266, 271–72 (Tex.App.—Beaumont 2001, no pet.); *City of Fort Worth v. Robles*, 51 S.W.3d 436, 443 (Tex.App.—Fort Worth 2001, pet. denied); *Reyes v. City of Houston*, 4 S.W.3d 459, 462 (Tex.App.—Houston [1st Dist.] 1999, pet. denied); *Zambory v. City of Dallas*, 838 S.W.2d 580, 583 (Tex.App.—Dallas 1992, writ denied).