COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-05-414-CV

 

CRISHA PAKDIMOUNIVONG,
                                              APPELLANTS

INDIVIDUALLY,
AND AS NEXT FRIEND 

OF
KADIN V. PAKDIMOUNIVONG 

AND
KEANE V. PAKDIMOUNIVONG, 

MINOR
CHILDREN AND ON BEHALF 

OF
THE ESTATE OF VATTANA 

PAKDIMOUNIVONG,
KHAMSY 

PAKDIMOUNIVONG
AND VANSAMOUTH 

PAKDIMOUNIVONG                                                                              

 

                                                   V.

THE CITY OF ARLINGTON                                                       APPELLEE

                                                                                                        

                                              ------------

 

           FROM
THE 348TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.  Introduction








In four issues, Appellants
Crisha Pakdimounivong, Individually, and as Next Friend of Kadin V.
Pakdimounivong and Keane V. Pakdimounivong, minor children and on Behalf of the
Estate of Vattana Pakdimounivong (AVattana@), Khamsy
Pakdimounivong and Vansamouth Pakdimouniv (collectively ACrisha@) assert
that the trial court erred (1) by concluding that Crisha did not allege injury
from the operation or use of a motor vehicle after she pleaded and offered
evidence that Vattana was run over by two different Arlington police cars
driven by two different Arlington police officers, (2) by concluding that
Crisha did not allege injury from the condition or use of tangible personal or
real property when she pleaded that Vattana=s injuries were proximately caused by improper application of
handcuffs and leg restraints and when the trial court made a finding of fact
that Arlington officers had in fact applied handcuffs and leg restraints to him
prior to the incident in question, (3) by refusing to make requested additional
findings of fact and conclusions of law on ultimate facts that impact Crisha=s ability to properly appeal the trial court=s order, and (4) by considering factual allegations made by Arlington
in an unverified plea.  We affirm.

II.  Background








In October 2003, Vattana was
involved in an automobile accident in Arlington, Texas that was investigated by
that city=s police
officers.  During the investigation,
Vattana became highly combative resulting in two altercations with the officers
and resulting in at least five officers participating in the subduing and
restraining of Vattana.  During the
incident, Vattana had to be pepper sprayed, placed in handcuffs, and taken into
custody at the scene of the accident.  He
was initially placed in an Arlington police car to be driven by Officer Vire.  Vattana kicked out the window of this car
before the car left the scene of the accident and was removed from this
car.  Although the majority of the
testimony was that Vattana was subsequently restrained in a second patrol car
driven by Officer Haven, there was later some dispute as to whether leg
restraints were properly applied to him when he was placed in Officer Haven=s patrol car.  This car, driven
by Officer Haven, along with two other patrol cars, began transporting Vattana
to jail with Officer Haven=s vehicle in the lead, followed by a vehicle driven by Officer Vire,
and the third car driven by Officer Grimmett.








According to Officer Vire, as
he was driving eastbound on I-20, behind Officer Haven=s vehicle, he thought he saw Vattana banging his head on the rear
driver=s side window.  He began to pick
up his police radio microphone to let dispatch know.  However, Officer Haven got on the radio prior
to him.  After Officer Vire saw Vattana
hit the window with his head, he saw what appeared to be Vattana kicking at the
window.  He was approximately two car
lengths from Officer Haven=s vehicle at that point.  After
the kicking, he saw sparkles in the air, which was glass shattering.  Immediately, he saw a blur in front of his
vehicle down at the bumper.  He was not
able to brake, swerve or react in any way to the blur.  Officer Vire felt his vehicle hit the blur
and realized it was Vattana.  Only a few
seconds passed from the time the window shattered until he saw the blur.  He did not know that it was possible for
Vattana to jump out of the car, and did not believe that Vattana would jump out
onto the highway.  Officer Vire thought
Vattana was simply trying to damage the car, not escape. If he had seen Vattana
coming out of the window, he testified that he would have attempted to take
some evasive action.  However, he didn=t know that he would have had enough time to react to the situation.








According to Officer
Grimmett, he testified that just prior to the accident involving Vattana, he
was proceeding eastbound on I-20 behind Officer Vire with Officer Haven in the
lead and Vattana in the backseat of Officer Haven=s vehicle.  Officer Grimmett
testified he believed that he first knew something was wrong when he saw
Officer Haven=s overhead
lights come on and heard Officer Haven on the radio stating something to the
effect that Vattana had kicked out the window of his patrol car.  As soon as he saw that Officer Haven=s overhead lights were on, he and Officer Vire followed Officer Haven
towards the shoulder.  Officer Grimmett
was decreasing his speed as he went to the shoulder.  He saw in the roadway what appeared to be a
body, a split second before he ran over Vattana.  When Officer Grimmett saw Vattana in the
roadway, he had no opportunity to swerve and he was already braking.  Officer Grimmett further testified that as he
was behind Officers Haven and Vire, it never entered his mind that Vattana
could actually get out of the vehicle once the window was smashed.  His immediate thought was that he and the
other officers were going to be struggling on the side of the road to secure
Vattana again.  Officer Grimmett did not
know that Vattana had escaped from the leg restraints until after his vehicle
hit him.








According to Officer Haven,
as he began transporting Vattana, he looked in his rearview mirror and saw
Vattana spitting and he requested Vattana to not spit.  As he traveled onto I-20, Officer Haven
looked in his rearview mirror at Vattana who was seated upright looking
down.  As Officer Haven was driving, he
heard a loud crash and immediately picked up the radio and activated his
emergency lights while attempting to get to the side of the road.  Between leaving the scene of the arrest and the
time that Vattana kicked out the window of the moving vehicle and jumped onto
the roadway, a maximum of two minutes and twenty-two seconds elapsed.  During that time, Officer Haven checked on
Vattana through his rearview mirror twice and Vattana was seated upright and
not moving.  Officer Haven does not know
how Vattana freed himself so quickly from the vehicle nor did he see him jump
out the window of the vehicle.  It was
only a matter of seconds from Officer Haven hearing the loud crash of the
window being kicked out and the officer moving to the side of the road and
getting out of his vehicle.

All of the officers involved
in the transport testified as to the sudden, unexpected, and very quick escape
of Vattana onto the highway and that they had no time to react.  The vehicles driven by Officer Vire and by
Officer Grimmett both ran over Vattana, resulting in Vattana=s death.  An autopsy confirmed
that Vattana had methamphetamines in his system at the time of his death, which
may explain the extreme behavior described by officers that led to his death.

Chrisha sued the City of
Arlington (AArlington@), which filed a plea to the jurisdiction.  The plea was granted by the trial court and
this appeal resulted. 

III.  Standard of Review  

A. Plea to the Jurisdiction








A plea to the jurisdiction
challenges the trial court=s authority to determine the subject matter of the action.  See Tex. Dep=t of Transp. v. Jones, 8 S.W.3d
636, 638 (Tex. 1999).  The standard of
review of an order granting a plea to the jurisdiction based on governmental
immunity is de novo.  Tex. Natural
Res. Conservation Comm=n v. IT-Davy, 74 S.W.3d 849, 855 (Tex.
2002); Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998), cert.
denied, 526 U.S. 1144 (1999).  It is
the plaintiff=s burden to
allege facts that affirmatively establish the trial court=s subject matter jurisdiction.  See
Tex. Ass=n of Bus. v.
Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex.
1993).  In determining whether the
plaintiff has met this burden, this court is to look to the allegations in the
plaintiff=s pleadings,
accept them as true, and construe them in favor of the plaintiff.  See Univ. of N. Tex. v. Harvey, 124
S.W.3d 216, 220 (Tex. App.CFort Worth 2003, pet. denied). 
While the court must construe the allegations in favor of the
plaintiffs, the court is not bound by legal conclusions.  Tex. Natural Res. & Conservation Comm=n v. White, 13 S.W.3d 819, 822 (Tex.
App.CFort Worth 2000), rev=d on other grounds, 46 S.W.3d 864 (Tex. 2001);
Tex. Parks & Wildlife Dep=t v. Garrett Place, Inc., 972 S.W.2d
140, 143 (Tex. App.CDallas 1998,
no pet.); Salazar v. Morales, 900 S.W.2d 929, 932 (Tex. App.CAustin 1995, no pet.).  When
deciding a plea to the jurisdiction, a court must consider evidence Awhen necessary to resolve the jurisdictional issues raised.@  Bland ISD v. Blue, 34
S.W.3d 547, 555 (Tex. 2000).  The Texas
Supreme Court has explained the approach to be taken when a governmental entity
challenges the jurisdictional facts and explained the scope of that entity=s burden:








Then,
in a case in which the jurisdictional challenge implicates the merits of the
plaintiff=s
cause of action and the plea to the jurisdiction includes evidence, the trial
court reviews the relevant evidence to determine if a fact issue exists.  The United States Supreme Court and all of
the federal circuits have authorized federal district courts to consider
evidence in deciding motions to dismiss for lack of subject matter jurisdiction.  If the evidence creates a fact question
regarding the jurisdictional issue, then the trial court cannot grant the plea
to the jurisdiction, and the fact issue will be resolved by the fact finder.  However, if the relevant evidence is
undisputed or fails to raise a fact question on the jurisdictional issue, the
trial court rules on the plea to the jurisdiction as a matter of law.

 

Tex. Dep=t of Parks & Wildlife v. Miranda, 133
S.W.3d 217, 227 (Tex. 2004) (internal citations omitted, emphasis added).  The supreme court then stated that, AWe acknowledge that this standard generally mirrors that of a summary
judgment under Texas Rule of Civil Procedure 166a(c).@  Id. at 228.  The Texas Supreme Court recognizes that the
procedure in such situations parallels summary judgment practice.  Id. 
Going further, the court explained that, ABy requiring the [governmental entity] to meet the summary judgment
standard of proof in cases like this one, we protect the plaintiffs from having
to put on their case simply to establish jurisdiction.@  Id.  If there is no fact question on the
jurisdiction issue, the trial court will rule on the plea to the jurisdiction
as a matter of law.  Id. at 227B28.  Likewise, reviewing
jurisdictional determinations may require appellate courts to examine the
evidence supporting a claim in the same de novo manner it reviews a summary
judgment.  Id. at 228.

 

 








B. Legal and Factual
Sufficiency 

A legal sufficiency challenge may only be sustained when:
(1) the record discloses a complete absence of evidence of a vital fact; (2)
the court is barred by rules of law or of evidence from giving weight to the
only evidence offered to prove a vital fact; (3) the evidence offered to prove
a vital fact is no more than a mere scintilla; or (4) the evidence establishes
conclusively the opposite of a vital fact. 
Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex.
1998), cert. denied, 526 U.S. 1040 (1999);
Robert W. Calvert, ANo Evidence@ and AInsufficient
Evidence@ Points of
Error, 38 TEX. L. REV. 361, 362-63 (1960).  In
determining whether there is legally sufficient evidence to support the finding
under review, we must consider evidence favorable to the finding if a
reasonable factfinder could, and disregard evidence contrary to the finding
unless a reasonable factfinder could not. 
City of Keller v. Wilson, 168 S.W.3d
802, 827
(Tex. 2005). 








Anything more than a scintilla of evidence is legally
sufficient to support the finding.  Cont=l Coffee Prods.
Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996); Leitch v. Hornsby,
935 S.W.2d 114, 118 (Tex. 1996).  When
the evidence offered to prove a vital fact is so weak as to do no more than
create a mere surmise or suspicion of its existence, the evidence is no more
than a scintilla and, in legal effect, is no evidence.  Kindred v. Con/Chem, Inc., 650 S.W.2d
61, 63 (Tex. 1983).  More than a
scintilla of evidence exists if the evidence furnishes some reasonable basis
for differing conclusions by reasonable minds about the existence of a vital
fact.  Rocor Int=l, Inc. v. Nat=l Union Fire Ins.
Co.,
77 S.W.3d 253, 262 (Tex. 2002). 

An assertion that the
evidence is factually insufficient to support a fact finding means that the
evidence supporting the finding is so weak or the evidence to the contrary is
so overwhelming that the answer should be set aside and a new trial ordered.  Garza v. Alviar, 395 S.W.2d 821, 823
(Tex. 1965).  We are required to consider
all of the evidence in the case in making this determination, not just the
evidence that supports the finding.  Mar.
Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex.), cert. denied,
525 U.S. 1017 (1998).

IV.  Sovereign Immunity

The doctrine of sovereign or
governmental immunity prohibits suits against a governmental entity unless
there has been a clear and unambiguous constitutional or statutory waiver of
that immunity.  Dallas County Mental
Health & Mental Retardation v. Bossley, 968 S.W.2d 339, 341 (Tex.), cert.
denied, 525 U.S. 1017 (1998).  This
immunity from suit defeats a trial court=s subject matter jurisdiction, which is never presumed.  Jones, 8 S.W.3d at 638B39; Tex. Air Control Bd., 852 S.W.2d at 443B44.








The initial determination
this court makes is whether the municipality is performing a proprietary or a
governmental function.  McKinney v.
City of Gainesville, 814 S.W.2d 862, 865 (Tex. App.CFort Worth 1991, no writ).  This
determination is crucial because section 101.0215(b) states that the Texas
Torts Claims Act Adoes not
apply to the liability of a municipality for damages arising from its
proprietary functions.@  Tex.
Civ. Prac. & Rem. Code Ann. ' 101.0215(b) (Vernon 2005). 
Whereas if the action engaged in by a municipality is considered to be a
governmental function, the TTCA does apply, and further analysis under the act is
required to determine a municipality's potential liability.  McKinney, 814 S.W.2d at 865.  In this case, police protection and control
are governmental functions.  See Tex. Civ. Prac. & Rem. Code Ann. ' 101.0215(a)(1).  Therefore, the
court must next determine whether an exclusion or exception to the limited
waiver provisions of the Texas Tort Claims Act applies.  McKinney, 184 S.W.2d at 866.  If not, the limited waiver of governmental
immunity provisions control.  Id.;
Tex. Civ. Prac. & Rem. Code Ann.
' 101.001, et seq. 
Initially, however, under Crisha=s first issue, we must determine if an exemption is present under
section 101.055(2) of the Texas Tort Claims Act.

 

 








V. Operation or Use of a
Motor Vehicle

In her first issue, Crisha
asserts error in the trial court=s conclusion that she did not allege injury from the operation or use
of a motor vehicle after she pleaded and offered evidence that Vattana was run
over by two different Arlington police cars driven by two different Arlington
police officers.  First, there is no such
finding made by the trial court. 
Conclusion of Law No. 7 reads AThe death of Vattana Pakidmounivong was not caused by the operation or
use of a motor vehicle by Officer Haven and, therefore, Arlington=s governmental immunity has not been waived.@  [Emphasis supplied.]  This finding is explained by the trial court=s Conclusion of Law No. 8, which reads AThe motor vehicle driven by Officer Haven did no more than furnish the
condition that made injury possible to [Vattana].@  These are correct holdings by
the trial court.  The car driven by
Officer Haven did not strike Vattana, but was the one from which Vattana
escaped and then jumped into the middle of traffic on the highway. Thus,
Vattana=s personal injury and subsequent death did not arise from the
operation or use of this motor vehicle.  See
Tex. Civ. Prac. & Rem. Code Ann.
' 101.021 (Vernon 2005).  The Acondition@ conclusion
is not challenged.








With regards to Officers Vire
and Grimmet, who were driving the vehicles that did strike Vattana after he
escaped onto the freeway, and hence were motor vehicles whose operation did
cause injury, Conclusion of Law No. 9 reads AThere was no evidence to support a finding of conscious indifference
or reckless disregard with regard to the driving behavior of Officers Vire and
Grimmett.@  The trial court further found in Finding of
Fact No. 20 that AOfficers
Vire and Grimmett did not have time to react or take evasive action when
[Vattana] jumped onto the Interstate in front of their vehicles.@  We agree.

The Texas Tort Claims Act
waives immunity from liability and suit in a number of circumstances.  But the act includes a subchapter entitled AExclusions and Exceptions@ listing circumstances in which its waiver of immunity provisions do
not apply.  See Tex. Civ. Prac. & Rem. Code Ann. '' 101.051B066 (Vernon
2005); City of San Antonio v. Hartman, 201 S.W.3d  667, 672B73 (Tex. 2006).  Among those is
section 101.055(2) governing emergency situations:

This
chapter [Texas Tort Claims Act] does not apply to a claim arising:

. . .
.

(2) from the action of an employee while responding
to an emergency call or reacting to an emergency situation if the action is in
compliance with the laws and ordinances applicable to emergency action, or in
the absence of such a law or ordinance, if the action is not taken with
conscious indifference or reckless disregard for the safety of others . . . .

 

Tex. Civ. Prac. &
Rem. Code Ann. ' 101.055(2). 








We first address the Aemergency@ language of
the statute.  Initially, Crisha asserts
that to invoke the emergency exception, Arlington had the burden under a plea
to the jurisdiction to prove, as a matter of law, that its police officers were
operating an emergency vehicle at the time of the incident in question.  We categorically reject this assertion for
the simple reason that such language is not found in the statute.  See id. 
Further, Arlington does not argue, nor should it, that any of the
officers involved were responding to an emergency call when Vattana, while
being transported to jail, placed himself in the middle of highway
traffic.  Rather, Arlington argues that
the officers were reacting to an emergency situationCVattana attempting to escape from Officer Haven=s patrol car.  Arlington is
correct.  








Crisha contends that the
evidence is legally and factually insufficient to support a finding that the
Arlington officers were responding to an emergency situation.  The undisputed evidence indicates that when
the police officers became aware of an attempted or ongoing escape, overhead
flashing lights were activated, radio contact was attempted, and vehicles began
to slow down and move to the side of the road. 
Vattana threw himself onto the highway, after breaking out the window,
and was struck.  It should be noted at
this point that during the first incident involving Vattana and Officer Vire=s police car when he kicked out the window, he did not exit the
vehicle, nor was the vehicle moving at the time.  Therefore, we hold there is legally and
factually sufficient evidence that when Vattana flung himself from the moving
police car the officers were reacting to an emergency situation.

Crisha urges that the term Aemergency,@ which is
undefined in the statute, should be defined in accordance with the Pattern Jury
Charge which indicates that an emergency does not occur if it is caused by any
negligence of the person claiming the emergency.  2 Comm.
on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges,
PJC 3.3 (2d ed. 2003).  We reject this
contention because this inferential rebuttal is a defense to a negligence
allegation and is thus inapplicable, and also, in fact, does not actually
define the term Aemergency.@  








Crisha asserts that the
emergency exception does not apply to improper look-outs or the failure to
maintain a proper following distance.  See
Tex. Transp. Code Ann. ' 545.062(a) (Vernon 1999); Deviney v. McLendon, 496 S.W.2d 161,
166B67 (Tex. Civ. App.CBeaumont 1973, writ ref=d n.r.e.); Higginbotham v. Ritchie, 367 S.W.2d 210, 212 (Tex.
Civ. App.C Fort Worth
1963, no writ).  The cases she cites in
support of this assertion are negligence cases not involving a plea to the
jurisdiction related to the Texas Tort Claims Act.  Furthermore, there was no evidence presented
to the trial court regarding improper look-out or failure to maintain a proper
following distance.  Accordingly, we
reject Crisha=s
contentions involving improper look-out and failure to maintain a proper
following distance as inapplicable to this case.   

Because we hold that the
police officers were reacting to an emergency situation and that Crisha=s related additional arguments are without merit, we must now address
whether the officers= actions
were in compliance with the laws and ordinances applicable to emergency action,
or in the absence of such a law or ordinance, if their actions were taken with
conscious indifference or reckless disregard for the safety of Vattana. 








Crisha contends that the officers= failure to
seatbelt and failure to apply leg restraints in such a manner so that Vattana
could not free himself amount to noncompliance with laws and ordinances
applicable to emergency action.  See Tex. Civ. Prac. & Rem. Code Ann. ' 101.055(2).  Crisha relies on City of San Antonio v.
Higle, 685 S.W.2d 682 (Tex. App.CSan Antonio 1984,
writ ref'd n.r.e.) for the proposition that prescribed
departmental policies satisfy the Alaws and
ordinances@ exception.  In the instant case, Officer Nguyen, one of
the officers at the scene of Vattana=s arrest,
testified that he applied the leg restraints properly and as tight as he
could.  In deposition testimony, the
other officers at the scene concurred that they believed Vattana was
seat-belted in the second patrol car. 
Although Officer Haven subsequently received a citation from Internal
Affairs for Vattana not being belted in the patrol car, he only received Acounseling@ as discipline.[1]  Furthermore, it is unclear from the record whether
this citation was issued for violating a prescribed departmental policy or
because, as it was referred to by Crisha=s counsel during
the deposition, for the violation of a Ageneral order.@  In light of this ambiguity and the underlying
circumstances, it is impossible for us to conclude that Officer Haven=s citation is
evidence of noncompliance with the laws and ordinances applicable to emergency
action.  See Tex. Civ. Prac. & Rem. Code Ann. ' 101.055(2).  Further, the Aemergency@ occurred when
Vattana escaped the vehicle, not when he chose to extricate himself from his
restraints.








Therefore, we turn to the inquiry of whether the officers= actions were taken with conscious indifference or reckless disregard for the
safety of Vattana.  Because Aconscious
indifference@ and Areckless disregard@ are not defined
in the statute, we give each its ordinary meaning.  Tex. Gov=t Code Ann. ' 312.002 (Vernon 2005).  The supreme court
has often interpreted these terms to require proof that a party knew the
relevant facts but did not care about the result.  See, e.g., Fid. & Guar. Ins. Co. v.
Drewery Constr. Co., 186 S.W.3d 571, 576 (Tex. 2006); Dillard Dep=t Stores, Inc. v.
Silva, 148 S.W.3d 370, 373B74 (Tex. 2004; Lee
Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 785 (Tex. 2001); Burk
Royalty Co. v. Walls, 616 S.W.2d 911, 922 (Tex. 1981).  As detailed
above, there is no evidence that Officer Vire, Officer Grimmet, or any other
officer did not care what happened to Vattana. 
Accordingly, we find that the officers= actions were not taken with conscious indifference or reckless
disregard for the safety of Vatanna.  See
Tex. Civ. Prac. & Rem. Code Ann.
' 101.055(2). 

Having dismissed all of
Crisha=s arguments, her first issue is overruled.

VI.  Use of Tangible or Real Property

In her second issue, Crisha
asserts error on the part of the trial court by concluding that she did not
allege injury from the condition or use of tangible or real property.  Specifically, she alleges Vattana=s death was caused by the improper application of handcuffs and leg
restraints.








Whether the leg restraints
were properly placed on Vattana as the magnitude of the evidence indicates, or
were not properly placed on him, is not a determinative question.  Nor is the same question regarding
handcuffs.  This is so because their
application or use supplied a condition that allowed Vattana to break out of
the window and throw himself on the freeway in front of oncoming traffic.  Their failure, if any, did not cause the
window to break, nor cause Vattana to crawl out the broken window, nor cause
Vattana to throw himself on to the highway in front of oncoming traffic.  Vattana did these things.  Here, this property did not cause the injury,
it at most created a condition, a lack of restraint, that allowed Vattana to
cause his own death.  Property does not
cause injury if it does no more than furnish the condition that makes the
injury possible.  Bossley, 968
S.W.2d at 343.  Crisha=s second issue is overruled.

VII.  Findings of Fact and Conclusions of Law

In her third issue, Crisha
asserts that the trial court erred in refusing to make additional findings of
fact and conclusions of law.  We
disagree.  

According to Rule 296 of the
Texas Rules of Civil Procedure, parties may request findings and conclusions A[i]n any case tried in the district or county court without a jury.@  Tex. R. Civ. P. 296. 
Whether an evidentiary hearing is a non-jury trial as contemplated by
Rule 296, thus requiring findings and conclusions, is not determinative
here.  A trial court is required to file
findings of fact and conclusions of law within twenty days after a timely
request is made. Tex. R. Civ. P.
297.  Here, the trial court initially
filed findings and conclusions.  Thus the
issue is whether the trial was required to file additional findings and
conclusions. 








Upon a party's timely request
for additional findings, the trial court Ashall file any additional or amended findings and conclusions that are
appropriate.@  Tex.
R. Civ. P. 298.  Additional
findings are not required if the original findings and conclusions properly and
succinctly relate the ultimate findings of fact and law necessary to apprise
the party of adequate information for the preparation of the party's
appeal.  Main Place Custom Homes, Inc.
v. Honaker, 192 S.W.3d 604, 612 (Tex. App.CFort Worth 2006, pet. filed); see also Jamestown Partners, L.P. v.
City of Fort Worth, 83 S.W.3d 376, 386 (Tex. App.CFort Worth 2002, pet. denied). 
An ultimate fact is one that would have a direct effect on the
judgment.  Main Place, 192 S.W.3d
at 612.  If the refusal to file
additional findings does not prevent a party from adequately presenting an
argument on appeal, there is no reversible error.  Jamestown Partners, 83 S.W.3d at
386.  If the requested findings will not
result in a different judgment, the findings need not be made.  Main Place, 192 S.W.3d at 613.








Here Crisha requested a number of additional findings and
conclusions, none of which, if found, would have resulted in a different
judgement.  See id.  Among other findings and conclusions, the
trial court made explicit findings and conclusions that Vattana was a Adecedent,@ Arlington was
performing a governmental function, an emergency situation existed, and that
Officers Vire and Grimmett did not act with conscious indifference or reckless
disregard for the safety of Vattana.  In light of the trial court=s original findings and conclusions, each of the requested additional
findings and conclusions is unnecessary to support the trial court=s judgment.  The trial court=s original
findings and conclusions properly and succinctly relate the ultimate findings
of fact and law necessary to apprise Crisha of adequate information for the
preparation of her appeal.  See id. at
612.  Moreover, Crisha was not prevented from adequately presenting an argument on appeal, as she has
done, because each of the requested additional findings and conclusions are
subsumed in the original findings and conclusions, thus there is no reversible
error.  Jamestown Partners, 83
S.W.3d at 386. 

Crisha=s third issue is overruled.

VIII.  Unverified Plea to the Jurisdiction

In her final issue, Crisha
complains that the trial court erred in considering the factual allegations in
the Arlington=s plea to
the jurisdiction, because it was unverified. 
We disagree.   

Texas Rule of Civil Procedure
93 lists sixteen matters that must be verified by affidavit.  Tex.
R. Civ. P. 93.  An attack on the
lack of subject matter jurisdiction based on governmental immunity is not among
those listed.  Id.  








Crisha relies on Sparks v.
Bolton and Olivas v. Barjas for the contention that, although not
mentioned in Rule 93, pleas to the jurisdiction must be verified.  Sparks v. Bolton, 335 S.W.2d 780, 785
(Tex. Civ. App.CDallas 1960,
no writ); Olivas v. Barajas, 285 S.W.2d 894, 895 (Tex. Civ. App.CSan Antonio 1955, no writ).  Sparks
involved a plea in abatement, not a plea to the jurisdiction, thus any mention
of a plea to the jurisdiction is mere dicta. 
Sparks, 335 S.W.2d at 785. 
Olivas simply asserts the proposition that a Aplea to the jurisdiction is essential,@ but cites no rule or case law in support of that contention.  Olivas, 285 S.W.2d at 895.  Moreover, two courts of appeal have held that
a plea to the jurisdiction is not of the type that needs to be verified.  See Ab-Tex Beverage Corp. v. Angelo
State Univ., 96 S.W.3d 683, 688 (Tex. App.CAustin 2003, no pet.); Am. Pawn & Jewelry, Inc. v. Kayal,
923 S.W.2d 670, 672 (Tex. App.CCorpus Christi 1996, writ denied). 








We are aware of our holding
in City of Fort Worth v. Robles, 51 S.W.3d 436, 444 (Tex. App.CFort Worth 2001, pet. denied), disapproved on other grounds, City
of Grapevine v. Sipes, 195 S.W.3d 689, 695 (Tex. 2006).  In that case, the court noted that Rule 93
provides that A[a] pleading
setting up any of the following matters, unless the truth of such matters
appears of record, shall be verified by affidavit,@ and held that the record established that the City of Fort Worth=s assertions establishing its immunity from suit were matters that
appeared of record.  Id.
(emphasis in original).  The court
then held that the city fell within the exception provided in Texas Rule of
Civil Procedure 93 and thus was not required to verify its plea.  Id. at 444B45.  This holding is correct on
the facts of that case.  

However, we hold in this case
that based on the plain language of Rule 93, no verification is required unless
specifically enumerated in the Rule or included in catch-all paragraph[2]
16 of Rule 93.  We expressly reject
the implication of City of Fort Worth v. Robles that a plea to the
jurisdiction is required to be verified. 
Crisha=s fourth
issue is overruled.

IX.  Conclusion

Having overruled all of
Crisha=s issues, we affirm the judgment of the trial court.

 

 

BOB MCCOY

JUSTICE

 

PANEL B:   DAUPHINOT, GARDNER,
and MCCOY, JJ.

 

DELIVERED: 
November 30, 2006

 

 











[1]Officer Haven also testified that Acounseling@ is Aone of the lowest forms of
discipline@ and basically consists of being
counseled not to let it happen again.  





[2]AAny other matter required by
statute to be pleaded under oath.@ Tex. R. Civ. P.
93(16).